**IMPERIAL TRADING CO., Inc., v. MARYLAND CASUALTY CO.**

No. 14580.

Court of Appeal of Louisiana. Orleans.

March 12, 1934.

P. M. Milner, of New Orleans, for appellant.

M'Caleb & M'Caleb, of New Orleans, for appellee.

HIGGINS, Judge.

Plaintiff brought this action, on an open stock burglary policy of insurance written by the defendant, to recover two losses alleged to have been' sustained while the policy was in force and effect, one on February 27, 1931, amounting to $909.22, and the other on March 16, 1931, amounting to $633.60, consisting of· tobacco, cigars, and cigarettes stolen from the premises. Plaintiff also asked for the allowance of statutory penalties and attorneys' fees under the provisions of Act No. 59 of 1921 (Ex. Sess.).

The defense as to the first loss is that there were no visible marks, indicating the use of force, at the place on the premises where the burglars are said to have gained entrance, this being a condition precedent to defendant's liability under the policy provisions. As to the second loss the defenses are, first, a reiteration of the aforementioned position; second, that the policy had been canceled by defendant on March 5, 1931; third, that there is not sufficient proof of loss of merchandise.

The trial court rendered judgment in favor· of the plaintiff for the second loss only and defendant has appealed. Plaintiff has answered the appeal and asked that the judgment be amended by increasing it to the full amount claimed.

Plaintiff is in the wholesale merchandise business, occupying the premises 106 Wells street, this city. The defendant issued a policy effective for one year from October 31, 1930, insuring the plaintiff against loss by burglary of merchandise, etc., from assured's premises. On February 27, 1931, some of the plaintiff's clerks worked late and the employee last to leave testifies that he closed the front door of the premises that leads to the sidewalk and locked it with three Yale locks, one at the top, one at the center, and one at the bottom. The next morning, when the president of plaintiff company inserted a key in the top Yale lock, the door opened and half an hour later it was discovered that some one had entered the storeroom, which was also customarily locked, and abstracted $909.22 worth of cigars, cigarettes, and tobacco. The loss was reported to the insurance carrier and the police and an investigation made.

The plaintiff's evidence as to any visible signs of forceful entry on the front door

leading to the street is to the effect that the locks did not appear to work as well after said burglary as before, and that there appeared to be a slight mark on the door as if some one had attempted to insert the blade of a knife. The defendant's evidence tends to show that there was no visible sign of force and that the locks worked perfectly.

With reference to the storeroom door inside the premises the evidence is likewise conflicting, plaintiff's evidence tending to show that there were scratches on the door and defendant's proving the contrary.

As to the second alleged burglary, the evidence of the plaintiff shows that another outer door, which was adjacent to a switch-track where merchandise was unloaded and brought into the building, was secured by two wooden bars that fitted across double doors that opened from the center, one of the bars being at the top and the other at the bottom thereof. It was additionally secured by merchandise being piled up against it. Either on the night of March 16, or the morning of March 17, 1931, these bars were broken, the door and the merchandise against it forced in, and cigarettes, cigars, and tobacco valued at $633.60 were stolen from the same storeroom where the first theft was committed. There were also marks on the storeroom door indicating that some one had used a chisel, or similar tool to force entry.

Notice of the second loss was neither formally reported to the police nor to the defendant because on March 5, 1931, a letter had been written by plaintiff's insurance broker that he had been notified by the defendant that the policy would be canceled effective March 9th. Plaintiff's officer, being under the impression that the policy was canceled, failed to give the required notices, but did state to the company's investigators on March 19th that there had been a second burglary.

■ The pertinent clauses of the policy read as follows:

"A. To indemnify the assured for all loss by burglary of merchandise, furniture, fixtures and equipment, from within the Assured's premises as hereinafter defined, occasioned by any person or persons who shall have made felonious entry into the premises by actual force and violence, when the premises are not open for business, of which force and violence there shall be visible marks made upon the premises at the place of such entry by tools, explosives, electricity or chemicals."

"'Premises' as used in this Policy shall be limited to that portion of the interior of the building designated in the Schedule, occupied solely by the Assured in conducting his business, but shall exclude; (a) show cases or show windows not opening directly into the interior of the premises; (b) public entrances, halls and stairways."

In disposing of the issue with reference to the first claim, our learned brother below said:

"There were no visible marks of force on the premises at the place of entry, that is, at the front door, and hence no case of liability under the contract."

We think that this accurately appraises the testimony on this point as well as correctly interprets the relevant provisions of the contract, because the clause above quoted clearly provides that there shall be visible marks of forceful entry upon the premises at the place of entry, and there were none.

With regard to the second alleged burglary, we conclude, as did the trial court, that there was sufficient proof of violent entry upon the premises at the place of entry.

■ There is no doubt that on account of the letter which the defendant caused the plaintiff's insurance broker to write to it on March 5, 1931, plaintiff's officers were under the impression that the policy had been canceled effective March 9th and, therefore, failed to formally notify the police and the defendant of the second burglary. It was because of the defendant's actions that the plaintiff was led to this conclusion and therefore the failure to give the formal notices cannot be invoked as a defense by the defendant.

■ Was the policy canceled effective March 9, 1931?

On March 5, 1931, Mr. I. J. Gauthier, an insurance broker who represented the plaintiff, wrote the following letter to the plaintiff:

"Imperial Trading Co., 106 Wells Street, New Orleans, La.

"Gentlemen: Re: Policy #M. B.—29175— Open Stock Burglary Insurance, Maryland Casualty Company.

"We are in receipt of a letter from Black, Rogers & Co. Ltd., Agents for the above company, requesting the return of the above captioned policy for cancellation, effective March 9th.

"We are going to make every effort in the meantime to place this insurance elsewhere

for your account. We are taking this means of advising you that liability with the Maryland Casualty Company ceases on March 9th. We hope you will appreciate our position in this matter."

"Yours very truly,
" [Signed] I. J. Gauthier."

Mr. Gauthier explains that he attempted to have the plaintiff return the policy, but that the plaintiff refused to do so because the first claim was pending. He further states that he had assured plaintiff that he would make every attempt to have defendant reconsider the matter, and, if not, he would endeavor to get another company to issue a similar policy. Thereafter, on March 19, 1931, defendant's representative admits, plaintiff's officer verbally reported that there had been another burglary committed on March 17th.

On March 26, 1931, the defendant wrote the plaintiff the following letter:

"Baltimore, March 26, 1931.
"Imperial Trading Co., Inc., 106 Wells St., New Orleans, La.
"You are notified that your Open Stock Burglary policy No. MB—29175 dated October 31, 1931, Renewal No. ———, dated ——— is hereby cancelled as of Noon, the 31st day of March, 1931, from and after which day and hour the Policy will be no longer in force.
"This action is occasioned by reason of Company's instructions.
"The unearned premium amounts to $81.72. Check in payment is attached.

"Maryland Casualty Company
"By Black, Rogers & Co., Ltd.,
"Wm. W. Black."

It is admitted that the return premium was not sent to the plaintiff from March 5 to March 26, 1931, and that when the return premium was tendered in the letter of March 26, 1931, it was figured on the basis of the insurance being effective to March 31, 1931.

The clause in the policy dealing with cancellation reads as follows:

"5. The Company shall be permitted at any reasonable time to inspect the premises covered hereby and may require the Assured to make the premises reasonably secure. This Policy may be suspended immediately by written notice from any representative of the Company, until such requirements are complied with to the satisfaction of the Company. During the period of such suspension, the Company shall not be liable hereunder. This Policy may be cancelled at any time by either of the parties upon written notice to the other party stating that thereafter cancellation shall be effective and the date of cancellation shall then be the end of the Policy period. If such cancellation is at the Company's request the earned premium shall be computed pro rata; if at the Assured's request the earned premium shall be computed at short rates in accordance with the table printed thereon. Notice of such cancellation or suspension, mailed to the Assured at his business address or at the premises covered hereby, or delivered to him at either place, shall be sufficient notice and the check of the Company or its Agent similarly mailed or delivered a sufficient render of any unearned premium. Reinstatement after suspension shall be granted by the Company in writing only, and the Assured shall be allowed the unearned premium pro rata for the period of such suspension."

In interpreting this language, the trial judge correctly said:

"But the letter of Mr. Gauthier, the plaintiff's broker, was not such a notice of cancellation as the policy contemplates. This must have been the view of the defendant, for the representatives of the company later sent the plaintiff its formal notice of cancellation accompanied by a check for return premium to take effect March 31, 1931. The company retained premium for the time up to that date. The second loss occurred before March 31. There was no suspension of the policy, and no case for suspension.

"It must be held that the policy was in force when the second loss occurred."

Counsel for defendant argues that the letter of March 26, 1931, was an oversight and error on the part of its employees. There is no evidence in the record that this was a mistake, or that the letter was inadvertently sent. Consequently we cannot consider the letter in that light.

■ Defendant finally complains that the proof of loss of merchandise is not adequate. The trial court was satisfied with the testimony of two of the plaintiff's witnesses to the effect that the records of the company indicated that that was the extent of the loss based upon the price that the plaintiff had paid for the merchandise and we see no reason to disturb his finding in that respect.

■ The claim for statutory penalties and attorney's fee is predicated upon the provisions of Act No. 59 of 1921 (Ex. Sess.). The question presented is whether or not that statute has any application to burglary insurance. We are assured by counsel that our

courts have not heretofore passed upon this question. Section 1 of this act reads in part as follows:

"Be it enacted by the Legislature of Louisiana, That whenever any loss or damage shall be suffered in this State from fire or theft by any person, firm or corporation upon property insured under a policy of insurance of any insurance company engaged in the business of insuring automobiles, trucks, motor propelled vehicles and other property against fire and theft, doing business in this State, and notice of the fact that such loss or damage has occurred shall be given by the person. * * *"

"Burglary" at common law is defined as follows: "Burglary at common law, is breaking and entering a dwelling house, or entering in the night-time, with the intent to commit some felony within same, whether the intent be executed or not." American- Encyclop. of Law, vol. 5, page 44.

Corpus Juris, vol. 9, at page 1010, § 6, verbo "Burglary," the meaning is given as follows: "To constitute a breaking there must be some degree of force, and a 'breaking, removing, or putting aside of something material which constitutes a part of the dwelling house, and is relied on as a security against intrusion.' 'In order to constitute it (a breaking) the action of the defendant must have been such as would, without additional effort, have made an entry possible.' "

In the case of State v. Méche, 42 La. Ann. 275, 7 So. 573, our Supreme Court held that the crime of burglary is not complete unless there is a breaking as well as an entry into the house. Actual breaking as applied to burglary means a making of an opening or mode of entrance into the building by force, but it does not necessarily contemplate the destruction of any of its parts.

The word "burglary" is broad enough to include the lesser crime of larceny, or theft, but this cannot be said with reference to the word "theft." Burglary is not necessarily included in larceny or theft, whereas the commission of theft might well be included in burglary. In short the greater includes the lesser, but the lesser does not include the greater. Since the statute limits the application of its provisions to cases of theft and does not provide specifically for cases of burglary, it is our opinion that the act cannot be applied in the instant case.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.