165 So. 242

# FIDELITY & CASUALTY CO. OF NEW YORK v. JACKS.

## 6 Div. 764.

Supreme Court of Alabama.
Jan. 16, 1936.

John W. Altman, Thos. H. Fox, and David R. Solomon, all of Birmingham, for appellee.

Cabaniss & Johnston and Gerry Cabaniss, all of Birmingham, for appellant.

BOULDIN, Justice.

The suit is on a policy of insurance, issued in lieu of a bond, under and pursuant to the Alabama Motor Carrier Act of 1931, General Acts 1931, p. 303, and p. 312, § 13.

On October 7, 1932, plaintiff, Nicholas W. Jacks, received personal injuries resulting from a collision of the vehicle in which he was riding with a truck owned

396

and operated by Baggett & Skaggs Truck Lines, Inc.

This was a motor transportation company, operating a truck line over the public highways as a common carrier of freight, between Birmingham and Memphis, subject to the Alabama Motor Carrier Act of 1931, and to the supervision and regulation of the Alabama Public Service Commission by authority of said act.

Plaintiff recovered a judgment against this transportation company for damages.

Execution being returned "no property found," the present suit was begun against the Fidelity & Casualty Company of New York, the insurance carrier for the transportation company, under a policy executed in lieu of a bond under section 13 of the Motor Carrier Act.

Two defenses are insisted upon: First, the liability for this injury was not within the coverage of the policy. Second, the policy had been canceled, and was not in force at the time this injury occurred.

The cause was tried on an agreed statement of facts.

Dealing with the question of coverage, the policy involved consisted of an ordinary automobile liability insurance policy, converted into the statutory undertaking by a rider or indorsement No. 3, framed by the Alabama Public Service Commission, and attached to the policy filed with the commission as per statute. This rider appears in full in the report of the case.

The agreed statement of facts recites:

"4. On and for sometime prior to, October 4, 1932, Baggett & Skaggs Truck Lines, Inc., owned and operated on its route between Birmingham, Alabama, and Memphis, Tennessee, three motor vehicles only, said motor vehicles being described as follows:

"GMC Tractor with 2½ ton Trailer #22656-A; Republic 3 Ton Tractor with Semi-trailer #AA1290378; GMC 3 Ton Truck #1257169.

"On October 5, 1932, Baggett & Skaggs Truck Lines, Inc., purchased an Indiana truck #TT226 which was used by it from and after October 5, 1932, in connection with its business as a motor transportation company and on its Birmingham, Alabama, to Memphis, Tennessee, route. None of the three motor vehicles which were owned and operated by Baggett & Skaggs Truck Lines, Inc., on October 4, 1932, which said

motor vehicles are described above, were withdrawn from its service or sold or disposed of in any respect at any time during the month of October, 1932. Prior to October 5, 1932, Baggett & Skaggs Truck Lines, Inc., owned and operated in its business three motor vehicles only, but on and after October 5, 1932, Baggett & Skaggs Truck Lines, Inc., owned and operated in its business four motor vehicles, said four motor vehicles being the three vehicles, which were owned by it on October 4, 1932, and the Indiana truck #TT226 which was purchased by it on October 5, 1932. On October 7, 1932, at the time the accident occurred the Republic tractor with semi-trailer was laid up for repairs and was not being used on the Memphis-Birmingham run, but after these repairs were completed it was returned to service and was used on said run with the other three vehicles described in this paragraph.

"5. Said Indiana truck #TT226 was never listed or described or scheduled by name or number in the policy of insurance which is attached hereto marked Exhibit 'A'.

"6. Baggett & Skaggs Truck Lines, Inc., did not file with the Alabama Public Service Commission a description of said Indiana truck #TT226 until the 27th day of October, 1932. * * *

"8. On October 7, 1932, while said Indiana truck #TT226 was being operated by Baggett & Skaggs Truck Lines, Inc., in the motor transportation business in the transportation of freight between Memphis, Tennessee, and Birmingham, Alabama, said Indiana truck #TT226 collided in Jefferson County, Alabama, with a vehicle in which complainant was riding and complainant received personal injuries in said accident."

Rule 13 of the Public Service Commission then in force, read: "All motor transportation companies shall give to each of their motor vehicles an identifying number which must be shown plainly on the outside of each said vehicle and shall file with the Commission a complete description of such vehicle, showing the identifying number, make, model and capacity. In the event any motor vehicle is withdrawn from service, or disposed of in any respect, the motor transportation company shall immediately notify the Commission of such withdrawal."

Appellant insists the liability under the policy is limited to the operation of the motor vehicles designated in the policy, or others substituted therefor, and therefore does not cover injuries from the negligent operation of the Indiana truck.

We are not impressed with the suggestion of appellee, that, under the agreed facts above quoted, this truck should be treated as "substituted" for the Republic truck on the occasion of the injury.

A fourth and additional truck, put into the business of the transportation company without first complying with rule 13 above, is the clear import of the agreed facts.

We deal with the case as if the Republic truck had also been running on that day.

Appellant relies on the express statement in the indorsement No. 3, saying " * * * The insurer hereby insures the motor vehicles described in the policy and any motor vehicles substituted therefor, but not additional motor vehicles," and further stipulation for payment of judgment for personal injuries "caused by the negligent operation of said motor vehicles."

Apart from the legal import of such policies, given in lieu of bonds, upon which a certificate of convenience and necessity is granted, conferring lawful authority to conduct a motor transportation business as a common carrier over the public highways of the state, we think appellant's construction of this indorsement is correct. But the same indorsement shows it was entered into pursuant to, and is to be construed in accordance with, the Alabama Motor Carrier Act of 1931.

Appellant insists, however, that the stipulation limiting its liability to the negligent operation of specified vehicles, was within the authority of the Public Service Commission.

Section 13 of the act does provide that the bond or insurance policy of like import "must be in the form and amount as prescribed by the Commission," and "shall contain such conditions, provisions and limitations as the Commission may prescribe." General Acts 1931,.p. 312.

But these provisions must be construed in connection with other provisions with which they are connected. Section 13 must be considered as a whole and in connection with the entire act.

The act, section 4 (page 306), declares it unlawful for any motor transportation company to operate without first having obtained a certificate of public convenience and necessity. This is to be granted on application after notice and hearing in which the commission shall consider numerous factors set forth in the act. To this end the commission makes rules prescribing the forms of applications, which rules must require certain statutory contents, including, among other things, the "size, weight and capacity of each vehicle to be used."

"(d). The commission shall require and every motor transportation company shall have attached to each unit or vehicle such distinctive marking or tags as shall be adopted by the Commission." Section 14 (d), p. 313.

The application for certificate or license shall be accompanied by an application fee for each vehicle to be employed in the business, graduated by the rated capacity of the vehicle for carriage of passengers or freight or both. Section 5, p. 309.

The mileage tax levied, in aid of maintenance of highways, is also graduated by the size and capacity of the vehicle employed, and the sworn mileage return filed at stated times must show "the number, kind and capacity of the motor propelled vehicle so operated." Section 5, p. 308.

All these provisions looking to the granting of the franchise, and the regulation of the operations of the carrier, whose business is conducted through the operation of motor vehicles over the public highways, disclose that the number, size, and identification of the vehicles employed in the business have an important place in the scheme of the Motor Carrier Act.

Another and distinct bond is given to the state conditioned for the payment of all mileage taxes and penalties, and the faithful compliance with the orders, rules, and regulations of the commission. Section 7, p. 310.

But section 13 (page 312) requires the giving of a bond for a much broader purpose. It defines, with unusual fullness and exactness the coverage of such bond. It expressly looks to the "protection" of three classes of persons: First, passengers and their baggage; second, shippers, against loss or damage to freight; third,

398

the public, all persons having equal rights in the use of the public highways.

Protection against what? "Against injury approximately caused by negligence of such motor transportation company, its servants or agents. * * * And every such bond shall provide indemnity for every such injury or loss for which such motor transportation company is or may be liable under the law of this State as such common carrier." Section 13, p. 312.

The provision requiring the bond to be in the form prescribed by the commission immediately follows the above clause. It was intended to assure a form of bond conforming to the coverage of the statute, not an authorization of the commission to provide another and different coverage.

Again, the provision that "Such bond shall contain such conditions, provisions and limitations as the Commission may prescribe" is immediately followed by this, "and shall be for the benefit of and subject to suit or action thereon by any person who shall sustain actionable injury or loss protected thereby, notwithstanding any provision in said bond to the contrary; and every bond or insurance policy herein named; so given, shall be conclusively presumed to have been given according to and to contain all the provisions of this Act." Section 13, p. 312.

"Protected thereby" manifestly refers back to the "protection" clause in the same section above noted.

Thus the statute is expressly written into the bond, notwithstanding any provisions purporting to afford less protection to those for whom the security is required.

The conditions and limitations within the power of the commission are such as are consistent with such coverage.

■ We must hold the intent of the law is to put financial responsibility behind the operations of the motor transportation company as a protection to those with whom they do business and the public concerned with the safety of the public highways being used by insured in the conduct of the business of a common carrier for hire.

It is not for the passenger, boarding a vehicle of such carrier to inquire whether the particular vehicle so publicly employed has been put into the service in conformity with lawful regulations; nor for a shipper

via such carrier to inquire what vehicle of such owner receives and carries his freight; nor for the public to be deprived of the security provided in the bond against the carrier's negligence by reason of another wrongful act of such carrier in putting into service a vehicle in violation of the rules with which he should comply.

Without question, the insurance policy, allowable in the descretion of the commission in lieu of the bond, carries all the coverage of a bond. This by express declaration of the concluding portion of section 13. General Acts 1931, p. 312.

Some difficulty seems to confront the commission in the framing of a rider to an ordinary automobile liability policy, because there are in the same contract, thus converted by the rider, stipulations affecting the insurer and insured as between themselves.

The commission here definitely wrote into the rider that it was given in pursuance of the Alabama Motor Carrier Act, and to be construed in accordance therewith.

The further provision relied upon by appellant may well have a field of operation between the insurer and insured, as affecting the indemnity in favor of the insured against liability under an automobile liability policy, maybe also the additional premiums due because of the statutory coverage of all vehicles employed in the business.

The indorsement was probably meant to conserve these rights as between the parties, but would be in better form if expressly so stated.

None of these considerations, however, can serve to restrict the liability written into the bond by the law in favor of those protected thereby. American Book Co. et al. v. State, 216 Ala. 367, 371, 113 So. 592; Royal Indemnity Co. v. Young & Vann Supply Co. et al., 225 Ala. 591, 144 So. 532; Limestone County v. Montgomery, Superintendent of Banks, 226 Ala. 266, 146 So. 607, 87 A.L.R. 164; Magic City Paint & Varnish Co. v. American Surety Co. of New York, 228 Ala. 40, 152 So. 42; Hipp v. Prudential Casualty & Surety Co. of St. Louis, Mo., 60 S.D. 300, 244 N.W. 346.

■ Considering the second defense, namely, the cancellation of the policy prior to the date of the injury sued for, we

observe : The statute section 13 (General Acts 1931, p. 312), provides: "no such bond or insurance policy herein named, so filed and approved, shall be canceled by the surety or company issuing the same except upon and after ten days notice in writing to said Commission, and upon such notice being given by the surety or company issuing said bonds or insurance policy, the certificate of public convenience and necessity of the person giving such bond or insurance policy shall stand revoked unless a new bond or insurance policy shall be filed with and approved by the Commission before the date upon which the cancellation thereof becomes effective."

The indorsement on the policy contained a like provision.

The agreed facts on this issue are these:

On August 22, 1932, the insured executed a writing, for valuable consideration, releasing and discharging the insurer from any and all liability under its automobile liability policy No. A49720 from and after noon of August 26, 1932. The insurer thereupon canceled the policy on its records, and returned the unearned premium, computed in accordance with the short rate cancellation table in said policy.

On August 31, 1932, the general agents of the insurer wrote a letter to the Alabama Public Service Commission, as follows:

"Re: Baggett and Skaggs, Inc., et al., Madison Insurance Company Policy #2209. The above assured have replaced their insurance with the Madison Insurance Company and we are enclosing herewith copy of the above numbered policy for your files. Please return the Fidelity & Casualty Company policy to us at your earliest convenience.

"Thanking you to give this matter your prompt attention, we are,
"Yours very truly,
"Treadwell & Harry,
"General Agents, J. B. Behr."

On the following day, the commission, through the chief of the transportation department, replied as follows:

"I have your letter of August 31, 1932, enclosing policy of the Madison Ins. Co. of Indiana, covering the motor vehicle operations of Baggett & Skaggs and Baggett Transportation Company, and asking for return of policy written by the Fidelity & Casualty Co., covering these same operations.

"I am returning herewith policy of the Madison Insurance Company of Indiana, for the reason that same cannot be accepted by this Commission as said Company is not authorized to do business in the State of Alabama.

"The policy of the Fidelity & Casualty Co. must remain in effect until cancelled in accordance with the provisions thereof."

Thus matters stood until October 8, 1932, the day following this accident, when the insured's general agents wrote the commission, saying, in effect, the letter of August 31st was intended as a cancellation of the policy, and requesting confirmation of the cancellation effective ten days after receipt of such letter. To this the president of the commission replied saying: "We advise your letter August thirty first does not constitute request for cancellation * * * advise if you desire now to give ten days' notice of cancellation of said policy."

Notice was so given by wire.

Without prolonged comment, we agree with the commission that the letter of August 31st was not effective to cancel the policy at the expiration of ten days after its receipt.

It did not purport to be an unconditional cancellation of the policy at such future date. It contemplated a substitution of another policy, assuming the commission could accept the policy tendered. It contemplated a return of the policy on file on acceptance of the new policy, not on a cancellation ten days later. The commission was fully justified in thinking there was no intent to leave the carrier without a bond, but a purpose to substitute one security for the other. When it was made known to the insurer that the substituted policy could not be accepted, and the old must remain in force until canceled as provided by law, it was for the insurer to apprise the commission of an absolute purpose to cancel, notwithstanding their proposed substitution could not be consummated.

We do not mean to say that the commission should surrender the policy on cancellation in due form. This is a public bond, filed with a state agency, and, while a record of the date of cancellation, if any, should be made, the obligation remains as evidence of liability for causes of action already accrued.

400

■ Notice of cancellation under statutes of this character should be clear and definite, not coupled with related proposals, leaving in doubt what is intended if the request as a whole cannot be complied with. Pomerantz v. Mutual Fire Ins. Co. of Chester County, 279 Pa. 497, 124 A. 139; Beaumont v. Commercial Casualty Ins. Co., 245 Mich. 104, 222 N.W. 100; John R. Davis Lumber Co. v. Hartford Fire Ins. Co. et al., 95 Wis. 226, 70 N.W. 84, 37 L.R. A. 131; Imperial Trading Co. v. Maryland Casualty Co. (La.App.) 153 So. 473; American Fidelity Co. v. R. L. Ginsburg Sons' Co., 187 Mich. 264, 153 N.W. 709; Payne v. President, etc., of Ins. Co. of North America, 170 Mo.App. 85, 156 S.W. 52; 5 Cooley's Briefs on Insurance (2d Ed.) 4585; 6 Cyc. of Insurance Law, 5098, § 1442.

Affirmed.

GARDNER, FOSTER, and KNIGHT, JJ., concur.