## HINDEL v. STATE FARM MUT. AUTO INS. CO. OF BLOOMINGTON, ILL.

### No. 6544.

Circuit Court of Appeals, Seventh Circuit.

May 18, 1938.

Rehearing Denied July 15, 1938.

Burke G. Slaymaker, of Indianapolis, Ind., Aaron H. Huguenard, of South Bend, Ind. (Slaymaker, Merrell & Locke, of Indianapolis, Ind., and McInerny & Huguenard, of South Bend, Ind., of counsel), for appellant.

Eli F. Seebirt, Lenn J. Oare, and Henry L. Humrichouser, all of South Bend, Ind. (Seebirt, Oare & Deahl, of South Bend, Ind., of counsel), for appellee.

Before SPARKS, MAJOR, and TREANOR, Circuit Judges.

MAJOR, Circuit Judge.

The involved action was brought to recover upon a policy of public liability and property damage insurance issued by the defendant, in which Oler and Stine were named as assured, together with an endorsement thereon executed in conformity with the Contract Carrier Statute of the State of Indiana, Burns' Ann.St.1933, § 47-1301 et seq. The complaint alleged that plaintiff's decedent, while an employee of Oler and Stine, came to his death by reason of their negligence, while operating a certain motor vehicle and trailer in the conduct of their business under a certificate

of public convenience and necessity issued by the Public Service Commission of Indiana; that about the time of the issuance of said certificate the defendant issued to Oler and Stine its personal liability and property damage insurance policy dated March 1, 1934, which policy was written under and pursuant to the provisions of chapter 46 of the Acts of the General Assembly of Indiana for the year 1925, and was payable to the State of Indiana for the benefit of all persons who may suffer personal injuries and property damage due to any negligence of the assured, his agents or employees, in the operation or use of any motor vehicle under said certificate of public convenience and necessity; that said policy, with such endorsement, was in full force and effect upon the day of said accident upon which judgment in the sum of $7,500 was recovered in the state court; that such endorsement was issued by the defendant and attached to said policy as required by the Public Service Commission of Indiana and was duly approved by said commission on the 11th day of May, 1934; that the judgment obtained in the state court was in full force and unpaid and was a final judgment; and that said judgment was based entirely upon the negligence of Oler and Stine; and that the death of plaintiff's decedent was due entirely to their neglect. Both the policy and the endorsement are attached to and made a part of the complaint. The latter is set forth in footnote.[1]

---

[1] Motor Vehicle Form
No. 6-A
Insurance Policy Endorsement.

The policy to which this endorsement is attached is written under and pursuant to the provisions of chapter 46 of the Acts of the General Assembly of the State of Indiana for the year 1925 and is payable to the State of Indiana for the benefit of all persons who may suffer personal injuries or property damage due to any negligence of the assured his/its agents or employes in the operation or use of any motor vehicle under certificate of public conveyance and necessity No. ——— issued on Application No. ———.

In consideration of the premium stipulated in the policy to which this endorsement is attached the insurer hereby waives a description of the motor vehicles operated or used under said certificate and agrees to pay any final judgment rendered against the holder of such certificate for personal injuries or damage to property other than that of the holder of said certificate due to the negligence of said holder, his/its agents or employes in the operation or use of any motor vehicle, whether listed in the original schedule of motor vehicles filed with the original application or whether it be an additional, substituted or emergency vehicle operated under said certificate by any order or rule of the Public Service Commission within the limits of the schedule hereinafter set out, and further agrees that, upon its failure to pay any such final judgment within sixty days from the date of its rendition or final affirmance on appeal, the judgment creditor may maintain an action against it in any court of competent jurisdiction to enforce such payment. This policy shall be a continuing indemnity. The indemnity thereof shall not be reduced as to any succeeding accident by any payment of any claim or by any judgment or any previous accident. Nothing contained in the policy or any endorsement thereon, nor the violation of any of the provisions thereof or of any law of the state by the assured shall relieve the insurer from any liability hereunder or from the payment of any such judgment.

No condition, provision, stipulation or limitation contained in the policy or any other endorsement thereon, nor the violation of any of the same by the insured shall affect in any way the right of any person injured in his person or property by the negligence of the insured or relieve the company from the liability provided for in this endorsement, or from the payment to such person of any such judgment, to the extent and in the amounts set forth in the schedule shown hereon; but the conditions, provisions, stipulations and limitations contained in the policy and any other endorsements thereon shall remain in full force and be binding as between the insured and the company.

Schedule.

On each motor vehicle used for the transportation of passengers, or property, or both, the insurer shall be liable to each person suffering damages as the result of any accident due to the negligence of the assured, his agents or representatives in the use or operation of such motor vehicle to the extent of the damages sustained, not exceeding five thousand dollars, and subject to the same limit, the total liability of the insurer on account of any one accident shall not exceed fifty thousand dollars.

It is understood and agreed that the words "damage to property," as used in this endorsement, shall be construed to

To this complaint defendant filed a general denial and in a separate paragraph, as a special defense, alleged that under the terms and conditions of the policy it was not liable for bodily injury to any employee of Oler and Stine, or to any person to whom Oler and Stine might be liable under any Workmen's Compensation Law and that the death of plaintiff's decedent was caused by injuries received while acting in the course of his employment by Oler and Stine.

Plaintiff's demurrer to said special defense was sustained. The cause was tried by a jury and a motion for a directed verdict was made by each of the parties. Defendant's motion was denied—plaintiff's allowed, and a verdict was returned in the sum of $5,520.84 as directed by the court, upon which judgment was entered.

The defendant moved for a transfer to the equity docket upon the ground that the cause of action alleged in the complaint was cognizable only in a court of equity, which motion was overruled.

The record discloses, or tends to disclose, that on January 20, 1935, plaintiff's decedent was directed by Oler and Stine to drive their truck to the Riverdale Products Company, Calumet City, Ill., to load a shipment of tankage on their truck and deliver the same to Hawkins and Pollard Company at Logansport, Ind.; that he loaded said tankage as directed and started for the city of Logansport by the usual and customary route or highway No. 29; and that on January 21, 1935, between said points and as he approached the latter, he sustained injuries which resulted in his death.

Oler and Stine, on the 9th day of April, 1934, filed with the Public Service Commission a petition to operate motor vehicles as a contract carrier of property over and upon the following route: Route 1 from Chicago to cities and towns on State and Federal Highways in Indiana, interstate only. The order of the Commission granting the permit is in part as follows:

"The evidence shows that petitioner now has contracts covering the transportation of property over the above routes with the following contractors, to-wit: 1. Ralph Johnson, Argos, Indiana. Petitioner will do only interstate business. He agrees to comply with Order No. 11,700 of the Commission and shall confine his operation to the transportation of merchandise of the above shipper only in interstate business and it is so ordered."

The remaining part of the order which may be material is found in the footnote.[2]

Gerald Stine, one of the partners of the assured firm in charge of the conduct of the firm's business, testified that they owned and operated two trucks in Indiana in carrying on their said business; that they had

cover any and all property of passengers in charge of the assured, or any of his agents or employes, while carried in or upon the insured motor vehicle, but shall ot include property (usually designated as "cargo") loaded for shipment or in transit by the insured.

In the event of the insolvency or bankruptcy of the insured the insurer shall not be relieved of the payment of such indemnity hereunder as would have been payable but for such insolvency or bankruptcy.

Any provision either in the body of the policy to which this endorsement is attached or in any other endorsement thereon or attached thereto in conflict with or contrary to the provisions of this endorsement shall be deemed to be cancelled hereby.

The policy to which this endorsement is attached shall not terminate either by expiration or cancellation until after ten days notice of such termination in writing by the insurer to the Public Service Commission of Indiana.

Attached to and forming a part of Policy No. 1000619—Indiana issued by State

Farm Mutual Auto Insurance Company to

(Name of Insurer)
Oler and Stine.

(Name of Insured)
State Farm Mutual Auto Insurance Co.,
By H. Perry,
(Signature of Insurer).

Approved by order of the Public Service Commission of Indiana, this 22nd day of June, 1934.

Perry McChord,
Attest: Chairman.
Pete H. Dawson,
Secretary.

[2] "It is Therefore Ordered By The Public Service Commission that a permit to operate motor vehicles as a contract carrier of property over route No. 1 be issued to Oler & Stine.

"It is Further Ordered that the applicant shall file with the Secretary of this Commission a bond, indemnity undertaking or policy of insurance executed by a company, mutual association or reciprocal exchange having legal authority to execute such instruments in the State of Indiana, guaranteeing the payment of

obtained only one permit from the Public Service Commission (being the one heretofore referred to) ; that on January 20, 1935, the truck involved in the death of plaintiff's decedent left Bourbon, Ind., and that the next time he saw the truck was when he went to the scene of the collision where the truck was in a ditch and loaded with a cargo of tankage. He also testified that he had given orders to the deceased to take the truck and get the cargo; that his firm had a contract with Feed Dealers Products Exchange at Argos which was operated by Ralph Johnson; that the cargo was picked up at Riverdale Products Company at Calumet City, Ill.; that it was consigned to Hawkins and Pollard at Logansport, Ind., and that it was while in the act of transporting the product by truck between these two points that plaintiff's decedent was killed. Objection was made and overruled to the witnesses' testimony as to where the load of tankage was picked up, on the grounds that the witness was not present and his answer could only amount to hearsay. On cross-examination by defendant's counsel is found the following:

"Mr. Huguenard: Q. When you told the court and jury that this truck picked up a load of tankage at Calumet City, Illinois, you are only saying what somebody else told you? Just answer the question.

"The Witness: A. No.

"Mr. Huguenard: Q. You were not there?

"The Witness: A. No. I can explain why I know it."

The witness was not further interrogated as to how or in what manner he obtained the knowledge or information as to where the load of tankage was picked up.

The policy issued by the defendant to Oler and Stine was dated March 21, 1934, and named as the subject of the insurance a Chevrolet truck and semitrailer, which was not the truck driven by plaintiff's decedent at the time of his death. An application for a certificate of title was made for the latter truck on or about August 15, 1934. The policy contained a provision that the defendant should not be liable for bodily injury of an employee of the assured while engaged in the business of the assured or in the operation, maintenance, or repair of the automobile, or to any person to whom the assured may be held liable under any Workmen's Compensation Law.

The essential errors urging for reversal are: First, the court erred in refusing to transfer the cause to the equity calendar; second, the court erred in sustaining plaintiff's demurrer to the second paragraph of defendant's answer; third, the court erred in overruling defendant's motion for a directed verdict; and fourth, the court erred in permitting the testimony of the witness, Stine, as to where the load of tankage was picked up which plaintiff's decedent was hauling at the time of his death.

It is contended by defendant that inasmuch as this is a suit on a written contract of insurance executed by the defendant to Oler and Stine wherein plaintiff is not a party, that the suit is cognizable only in equity. The fallacy of this contention lies in the fact that it is not merely a suit upon such insurance contract, but primarily one based upon the Public Service Commission endorsement executed in conformity with the statutory provision. Such provision of the Indiana statute is set forth in footnote.[3]

damages which may result from any and all accidents due to negligence, in the use or operation of such motor vehicles, which bond, indemnity undertaking or policy of insurance shall be payable to the State of Indiana for the benefit of persons who may suffer personal injuries or property damage on account of such negligence, and shall be in the amounts and limits as set out in the insurance policy endorsements of this Commission, No. 6A and 6C. The amount of cargo insurance carried shall at all times be in an amount sufficient to fully cover the property transported. The amount of cargo insurance to be carried may be agreed upon by the holder of this permit and the parties with whom he contracts."

[3] "47-1309. *Bond or insurance—Coverage.*—No person as herein provided shall operate any motor vehicle as a contract carrier upon any public highway of the state of Indiana until there shall have been filed with the public service commission of Indiana a bond, indemnity undertaking or policy of insurance, executed by a company, mutual association or reciprocal exchange, legally authorized to execute such instruments in the state of Indiana and to the approval of said commission, guaranteeing the payment of all damages which may result from any and all accidents due to negligence in the use or operation of such motor vehicle, which bond, indemnity undertaking or policy of insurance shall be payable to

It seems apparent that Oler and Stine have no interest in this suit; they were not made parties and no one claims they should have been. By this statute, a new cause of action, unknown to the common law, was created, giving the injured party a direct cause of action on the judgment against the insurance company. In Van Norden v. Morton, 99 U.S. 378, 25 L.Ed. 453, it is said on page 380:

"We think the rule is settled in this court that whenever a new right is granted by statute, or a new remedy for violation of an old right, or whenever such rights and remedies are dependent on State statutes or acts of Congress, the jurisdiction of such cases, as between the law side and the equity side of the Federal courts, must be determined by the essential character of the case, and unless it comes within some of the recognized heads of equitable jurisdiction it must be held to belong to the other."

■ This language, we think, is pertinent to the question presented. We do not regard the cases relied upon by defendant as controlling for the reason that none of them are based upon a statutory provision such as here involved. In Bosse v. Wolverine Insurance Co., 88 N.H. 98, 184 A. 359, there were three parties to the litigation and under such circumstances it was difficult, if not impossible, to submit the involved issues to a jury. In other cases questions of subrogation, reformation or garnishment were involved and, of course, in cases where such questions are presented, no adequate remedy at law exists. If the court erred in this respect, however, it was harmless. The verdict was a directed one and it is difficult to perceive how the mere transferring of the cause to the equity side of the docket and trying the same issues before the same court and even the same judge would be of any benefit to the defendant. At any rate, any benefit it would have derived from such procedure is not disclosed.

■ · In support of the second contested issue, defendant relies upon a provision in the original contract of insurance issued by defendant in which the defendant is expressly relieved from any liability for any bodily injury "to any employee of the insured while engaged in the business of the Assured * * * or in the operating

* * * of the automobile, or to any person to whom the Assured may be held liable under any Workmen's Compensation Law * * *." This was a provision relied upon by defendant in its special answer to which a demurrer was sustained. There seems to be no factual dispute but what plaintiff's decedent was an employee of the assured and that he sustained the injuries resulting in his death while engaged in driving a motor vehicle for the assured and in consequence thereof. Such a contention, it seems to us, is to ignore the rather plain and unambiguous language of the statute and the endorsement which the statute required and which was made a part of the policy. They all must be taken into consideration in determining the rights and obligations of the parties. There can be little room for doubt that provisions of the original contract, inconsistent with the provision of the endorsement as prescribed by the Public Service Commission or the statutory provision, are merged in and must give way to the latter. There is no provision in the endorsement or the Statute excluding employees of the carrier from protection; on the other hand, they are all inclusive. The endorsement expressly provides that it is "for the benefit of all persons who may suffer personal injuries or property damage due to any negligence of the assured, his agents or employees in the operation or use of any motor vehicles under Certificate of Public Conveyance and Necessity." The only exception made in the endorsement is that the insurer is not liable to the insured for injuries resulting from his own negligence. If it had been the intention of the lawmakers or the Public Service Commission to exclude an employee, it could, without difficulty, have been so provided. To thus construe the contract is to read into the statute, as well as the endorsement, something which is not there. In Continental Casualty Company v. Shankel, 10 Cir., 88 F.2d 819, the court there was construing an insurance policy endorsement almost in the precise words as we have here and thus was dealing with the identical question. There, as here, it was claimed that an employee of the assured, who was excluded under the original coverage, was not entitled to recover. The court disposed of the question, and we

the state of Indiana for the benefit of persons who may suffer personal injuries or property damages on account of such negligence and shall be in such amount as shall be fixed by such commission at the time of granting a permit for the operation of such motor vehicle."

think, correctly, in the following language on page 824: "The exclusion of the employees of Burch from the coverage of the policy proper is not of moment, since it is expressly provided in Form E that no condition, provision, stipulation, or limitation in the policy proper shall affect in any way the right of any person injured in his person by the negligence of Burch or relieve the Casualty Company from the liability provided for in Form E."

What has been said likewise applies to the language in the original policy, which seems to relieve the insurer where the assured may be held liable under any Workmen's Compensation Law. No such exception is made in the endorsement or the statute and, in the absence of the same, the provision in the original policy ceases to be effective.

Defendant also contends that it is not liable because the motor vehicle described in the original policy was not the one plaintiff's decedent was driving at the time he received his injuries. True it is, the evidence discloses that the motor vehicle used at the latter time was purchased and placed in operation by Oler and Stine, not only subsequent to the issuance of the original policy, but after the permit was granted to the assured by the Public Service Commission. In other words, it is contended that the motor vehicle operated at the time plaintiff's decedent sustained his injuries was not being used under the granted permit. Again we think defendant ignores the provisions of the endorsement and the purposes of the Contract Carrier Act. There is found in the endorsement sweeping provisions requiring the insurer to waive "a description of the motor vehicle operated or used under the Certificate" and fixing liability even though the contract carrier may violate "the provisions thereof or of any law of the State." It would seem to us that the purpose of the law requiring the giving of a bond would be defeated if the insurer could escape liability by merely showing that the contract carrier was using a motor vehicle different from the one in use at the time the permit was issued. Undoubtedly the purpose of the law was to give protection to persons injured by the negligence of the carrier in operating under a permit issued by the Commission. The endorsement required by the Commission, from its plain words, contemplated that the carrier might operate a vehicle not described in the policy or permit and the in-

surer was not permitted to escape liability even though the carrier might violate the law.

In Fidelity & Casualty Company of New York v. Jacks, 231 Ala. 394, 165 So. 242, the Supreme Court of Alabama had occasion to pass upon a similar question and held contrary to the contention made by the insurer, both there and here. We agree with the conclusions reached by that court. There, the court on page 246 said:

"We must hold the intent of the law is to put financial responsibility behind the operations of the motor transportation company as a protection to those with whom they do business and the public concerned with the safety of the public highways being used by insured in the conduct of the business of a common carrier for hire.

"It is not for the passenger, boarding a vehicle of such carrier to inquire whether the particular vehicle so publicly employed has been put into the service in conformity with lawful regulations; nor for a shipper via such carrier to inquire what vehicle of such owner receives and carries his freight; nor for the public to be deprived of the security provided in the bond against the carrier's negligence by reason of another wrongful act of such carrier in putting into service a vehicle in violation of the rules with which he should comply."

It is also insisted there is no evidence that this particular vehicle was being operated within the limits, that is, of the route defined and limited in the order of the Commission, or while making a haul within the limiting provisions of the order of the Commission. The validity of this contention rests upon the propriety of the testimony of the witness, Gerald Stine, heretofore referred to. It is argued that the testimony of this witness, as to where the load of tankage was picked up, was merely hearsay, as the witness was not present. We think the testimony is not subject to the criticism made. The witness was the manager of the assured's business. He gave the deceased orders as to where and when he should go to receive the cargo in question, he knew and gave orders as to whom the cargo should be delivered and actually saw the cargo at the place of the wreck and resulting injury. On cross-examination he denied that his testimony was hearsay and offered to explain how he possessed the information to which he had testified, but the explanation was not called

784

for. Under such circumstances, we are not impressed with defendant's contention.

■ Defendant also contends that the statute of Indiana (heretofore quoted— footnote 3) or the endorsement issued pursuant thereto is not for the protection and does not cover the next of kin of a deceased person for whose death the assured may be liable because of death by wrongful act, but only makes provisions "for the benefit of persons who may suffer personal injuries." In other words, the theory is advanced that, even though the insurer might be liable for a personal injury, such liability would cease upon the death of the injured party and that no right of action is maintainable by the administrator or next of kin of such person as is here claimed. Cases which are cited in support of such contention are generally not in point, but, whether in point or not, we do not 'agree with the theory thus advanced. We do not think it is a reasonable construction of the statutory provision referred to. It will be noted the statute requires a bond guaranteeing the payment of all damages which may result from any and all accidents due to negligence in the use or operation of such motor vehicle. This language is plain and unambiguous, but that later appearing in the same section "for the benefit of persons who may suffer personal injuries or property damages on account of such negligence" furnishes the basis for defendant's contention. Considering the purpose of the law in connection with the language used, we are unable to comprehend why the Legislature would make provision for the protection of a person receiving an injury on account of the negligence of common carriers operating within the state and at the same time intend that the death of the party suffering such injury should relieve the insurer of liability for such negligence. In our judgment it was not 'so intended and the statute should not be so construed. Even though we merely consider the language relied upon by defendant, "for the benefit of persons who may suffer personal injuries," yet we think the statute must be construed to cover an injury which results in death. Volume 32, Corpus Juris, p. 521, in ·treating of this subject matter, says: "There are two classes of personal injuries: Those that are fatal; and those that are not fatal. The term naturally includes injuries of both classes because no one of either class is not an injury. The obvious and ordinary meaning of the word is all

injuries, whether fatal or not; however, the word is known by its associates and by the sense in which it is used in other parts of the same contract or in similar agreements."

There is cited in support of the text, the case of Standard Life & Accident Ins. Co. v. McNulty, 8 Cir., 157 F. 224, and in discussing the question, the court on page 226 said: "The obvious and ordinary meaning of the word 'injuries' is all injuries, whether fatal or not, and where the words of a contract are clear, and their common meaning is plain, there is no room for construction."

We reach the conclusion that there are no errors which require a reversal, and the judgment is affirmed.