SAVOY, Judge.
Plaintiff, John Lacombe, owner and operator of a tavern in the City of Alexandria, instituted suit against defendant, his insurer, Zurich Insurance Company, on a Mercantile Open Stock Policy to recover the value of certain items stolen from the inside of the business premises during the night of September 19, 1964. The policy of insurance afforded loss by burglary while the premises are not open for business.
The defendant answered and denied liability on the grounds that there were no visible signs of the use of actual force and violence or visible marks made by tools, explosives, electricity or chemicals as required by the policy, and therefore, not a burglary within the contemplation of the policy, as evidenced by the following language :
“ ‘Burglary’ means the felonious abstraction of insured property (1) from within the premises by a person making felonious entry therein by actual force and violence, of which force and violence there are visible marks made by tools, explosives, electricity or chemicals upon, or physical damage to, the exterior of the premises at the place of such entry * * * »
After trial on the merits, the trial court found that the evidence preponderates to the effect that there was no breaking or entry by force or violence, and therefore, no burglary under the provisions of the policy, and rendered judgment for the defendant, Plaintiff appealed.
The evidence clearly establishes that a theft was committed, there was no fraud on plaintiff’s part, and that the taking of plaintiff’s property was not an “inside job”.
The question presented here is whether or not there was visible evidence of forcible entry within the contemplation of the policy in question.
Plaintiff testified that on the night in question, he secured the three entrances to his establishment. The back door and side door were locked from the inside, and the front door was secured by a metal hasp and large Yale lock. All of the windows are barred. Upon returning the following morning, he found that the latch on the *339 front door “had been tampered with” and “the lock was hanging on the door”. He opened the door and immediately observed that a quantity of whiskey and a television set were missing. Upon going inside he found the rear door was open, the bar having been removed. He further testified that the front door latch was bent and looked like it had been prized by a round steel pin, and that the lock also looked like it had been prized. The latch had not been bent before. He further testified to the effect that the lock was no longer usable; that he could not use it, did not want to use it and did not trust it anymore.
Leo Michiels, City Police Captain, testified he was called and went to investigate about an hour and a half after discovery by plaintiff. He saw no evidence of breaking into the building, but determined that it was not an inside job. He could not tell if there was any evidence of prying. Plaintiff told him that he used a key and opened the lock on the outside that morning. The captain also testified that he subsequently learned from other officers that two men named Phillips and Shadwell had been picked up on another burglary charge, and that a key had been used by them in the entry of plaintiff’s establishment.
Richard Wilkins, an insurance investigator and adjuster, testified he investigated the claim several days later, and that he inspected the door and locks and found nothing that would indicate there were any visible signs of force or breaking in. There was obvious damage to the hasp, but it was not shiny and did not appear to be of recent origin. Plaintiff re-enacted the discovery saying he would do exactly what he did. He took out his key, opened the lock and removed the bar, and said it was the same lock which had been on the door when the theft occurred. Wilkins further testified that he was satisfied that someone entered the place, took some merchandise, and that it was not an inside job.
Plaintiff argues that the purpose of the clause defining burglary is to protect the insurance company from “inside jobs” and fraud.
Defendant relies on Petrie v. Millers Mutual Fire Insurance Company of Texas (La.App., Orl., 1959), 115 So.2d 228, and Imperial Trading Company v. Maryland Casualty Company (La.App., Orl., 1934), 153 So. 473, where, in both cases, the court held for the defendant-insurer on the ground that there was no visible evidence of forcible entry.
Plaintiff attempts to distinguish the Petrie case, supra, on the fact that the equipment was stolen from plaintiff’s unlocked truck, and that in both the Petrie case and Imperial Trading Company case, supras, the guilty parties were not apprehended as in the case at bar.
In Petrie, supra, the court held that both burglary and theft must be accompanied by evidence of forced entry to warrant recovery. The court further said the reason for incorporating such a limitation to liability in cases of burglary was enunciated by the same court in Kline v. Ocean Accident and Guarantee Corporation, Ltd., 9 Orleans App. 210, (1912):
“It is clearly the purpose of the clause in the policy to protect the company against the res ipsa loquitur view that burglary may be inferred from disappearance of the objects irrespective of any evidence whatsoever of forcible entry.”
In the Imperial Trading Company case, supra, some of plaintiff’s clerks worked late and the employee last to leave testified that he closed the front door of the premises and locked it with three Yale locks, one at the top, one at the center, and one at the bottom. The next" morning, when the president inserted a key in the top Yale lock, the door opened. Later it was found that merchandise had been taken. Plaintiff said that the locks did not appear to work as well thereafter, and there appeared to be a slight mark on the door as if someone had attempted to insert the blade of a knife. Defendant’s evidence tended to show that there were no visible *340 signs of force and that the locks worked perfectly.
Defendant also cites Couch on Insurance 2d, Volume 10, Section 42:129, page 762, wherein the author states:
“The reason for the restrictions in burglary policies requiring visible evidence of forcible and violent entrance is to protect insurers from what are commonly known as ‘inside jobs’, and from the frauds that would inevitably result but for such protection. A policy provision requiring the existence of visible marks of the use of force or violence is therefore valid as a reasonable limitation on liability, as against the contention that it is invalid as an attempt to prescribe the character of evidence necessary to show liability.”
In an effort to establish visible evidence of forcible entry, plaintiff relies on his own testimony that the latch was bent and was not bent prior to the incident.
We think it is significant to note that plaintiff unlocked the front door lock and opened the door before realizing that a theft had been committed. Chief of Police Michiels testified he made the initial investigation on the following morning, and he found no indications of a breaking in by force or violence, nor did plaintiff claim or point out any evidence of such entry. He said that at the time of the investigation it was not noticeable that the front door latch was bent or that there had been any prying. Also, Wilkins testified that although the latch was bent, it had no shiny scars to indicate that it was of recent origin. He found no evidence of a breaking in.
Plaintiff’s statements relative to the lock being damaged and no longer usable appear to have been contradicted by his wife. Several months after the theft, plaintiff told Wilkins that the lock was damaged and produced a lock which Wilkins found to be unusable. However, plaintiff’s wife then interjected that this was not the lock in question, and that the lock in question was still in use on the front door.
We find preponderance of the evidence to be contrary to plaintiff’s case.
Although there appears to be no fraud on the part of plaintiff, and the taking of his property was not an inside job, the evidence does not establish the presence of sufficient visible evidence of forcible entry. The facts of the instant case, in that regard, appear to be very similar to the Imperial Trading Company case, supra, which held the evidence there to be insufficient to establish that a burglary had been committed under the provisions of the policy of insurance.
For the reasons assigned, the judgment of the trial court is affirmed at appellant’s costs.
Affirmed.