419 A.2d 139

**Christine CZARNECKI and Adolph Czarnecki, Appellants,**

**v.**

**DELCO CAB, INC.,; and General Accident Fire and Life Assurance Corporation, Garnishee.**

Superior Court of Pennsylvania.

Argued March 19, 1979.

Filed March 21, 1980.

---

Abraham Levin, Philadelphia, for appellants.

Edward M. Foley, Media, for appellee.

Before CERCONE, President Judge, and WATKINS and HOFFMAN, JJ.

CERCONE, President Judge:

This is an appeal from an order dismissing exceptions and direct that judgment be entered according to the verdict in favor of the garnishee–appellee, General Accident Fire and Life Assurance Corporation (hereinafter "General"). On or about January 5, 1975, an accident occurred between a taxicab owned by the defendant, Delco Cab, and the appellants' vehicle. A trespass action was instituted and resulted in a judgment in favor of the appellants in the total amount of $4,594.56. Thereafter, a garnishment proceeding was commenced against "General" and tried before an arbitration panel resulting in an award in favor of appellants for $4,594.56. "General" then took an appeal to the Court of Common Pleas where the matter was tried non–jury and presented on stipulated facts. That court found in favor of "General" and this appeal followed.

The record discloses that Delco Cab was insured under a liability policy issued by "General." Although the policy was in effect at the time of the accident, "General" defended the garnishment action on the grounds that the policy only covered scheduled vehicles and that the taxicab involved in the accident, a 1963 Dodge sedan, was not one of the scheduled vehicles listed in the policy.[1] Indeed it appears that "General" had no knowledge of the existence of this vehicle until appellants instituted garnishment proceedings. Appellants concede that the 1963 Dodge sedan had never been listed in the policy. Nonetheless, it is contended that since Delco was a taxicab company under the jurisdiction of the Public Utility Commission, "General" was liable notwithstanding the terms of its insurance contract with Delco. We must disagree.

1. The record also reveals that the policy provided that as new cabs were acquired for the fleet, they would be added to the policy, and as taxis were taken out of use, they would be deleted from the policy. Moreover, the amount of premium was in direct relation to the number of vehicles covered by the policy and a higher premium would have been charged by "General" had the 1963 Dodge sedan been included in the policy as a scheduled vehicle.

Initially, we note that appellants have failed to direct our attention to any cases or authorities in support of their position that an insurance carrier is liable to third parties injured by the cab company—regardless of the terms of its contract of insurance with the company—solely because the company is a common carrier regulated by the P.U.C.[2] Appellants merely refer to Section 1355 of the Public Utility Law of 1937, Act of May 28, 1937, P.L. 1053, Art. IX, § 915, as amended 66 P.S. § 1355, now 66 Pa.C.S. § 512 (1979), which states:

The commission may, *as to motor carriers, prescribe*, by regulation or order, such requirements as it may deem necessary for the protection of persons or property of their patrons and the public, including the filing of surety bonds, the carrying of insurance, or the qualifications and conditions under which such carriers may act as self–insurers with respect to such matters: Provided, however, that all motor carriers of passengers, whose current liquid assets do not exceed their current liabilities by at least one hundred thousand ($100,000) dollars, shall cover each and every vehicle, transporting such passengers, with a public liability insurance policy or a surety bond issued by an insurance carrier or a bonding company authorized to do business in this State, in such amounts as the commission may prescribe, but not less than five thousand ($5,000) dollars for one and ten thousand ($10,000) dollars for more than one person injured in any one accident. (Emphasis added.)

2. Appellants have simply cited several cases that either concerned statutes which required proof of financial responsibility before an individual could obtain a driver's license, or decisions construing the Uninsured Motorist Act. *See e. g., Montgomery v. Keystone Mut. Cas. Co.*, 357 Pa. 223, 53 A.2d 539 (1947); *Kyle v. McCarron*, 201 Pa.Super. 403, 192 A.2d 253 (1963); *State Farm Mut. Auto. Ins. Co. v. Williams*, 481 Pa. 130, 392 A.2d 281 (1978); *Harleysville Mut. Cas. Co. v. Blumling*, 429 Pa. 389, 241 A.2d 112 (1968). Those decisions, however, are clearly distinguishable from the case at bar. In the first place, those cases did not deal with the regulation of public utilities. More importantly, in the statutes there reviewed there was clear and specific evidence of a legislative intent to impose liability on the insurance companies notwithstanding any provisions in the insurance contract excluding coverage.

As is readily apparent, the above section does not impose the requirement of maintaining coverage for "each and every vehicle," on insurance carriers of public transportation companies. Rather, the duty of insuring coverage is placed on "motor carriers of passengers." We do note, however, that pursuant to the authority granted it by Section 1355, supra, now 66 Pa.C.S. § 512, the PUC has promulgated a regulation pertaining to common carriers and insurance. That regulation, found at 52 Pa.Code § 29.104, provides in relevant part:

> (a) No common carrier shall engage in intrastate commerce, and no certificate will issue or authorize such operations, except as provided in subsection (d) of this section until there has been filed with and approved by the Commission a certificate of insurance with an insurer authorized to do business in this Commonwealth, to provide for the payment of any final judgment recovered against the insured for bodily injury to or the death of any persons, or the loss of or damage to property of others resulting from the operation, maintenance, or use of a motor vehicle in the insured certificated service. The liability of the insurance company on each motor vehicle operated by an insured in common carrier service shall be in amounts not less than the following minimum limits:

Although the foregoing regulation or section lends some strength to appellant's argument, we do not feel that it constitutes sufficient evidence of a legislative intent to impose liability on the insurance company under circumstances such as presented in the instant case. In other words, while the regulation and its enabling statute were designed for the protection of the public, it is our considered opinion that this regulation alone does not reflect a clear intent to supersede the express language in the contract between the insurer and the common carrier.[3] Had the

3. It should be noted that the enabling act pursuant to which this regulation was promulgated empowered the P.U.C. to regulate common carriers with respect to insurance coverage. If the law is read as appellant suggests, insurance companies would carry the burden of policing common carriers to assure all their vehicles were scheduled all the time. While we offer no opinion as to whether the P.U.C.

legislature so desired, it could have easily achieved such a result by requiring the parties to execute an endorsement to the policy, or to the certificate of insurance filed with the Commission, making the insurer absolutely liable to injured third persons notwithstanding any violation of the terms or conditions of the policy by the insured. *See e. g., Thompson v. Amalgamated Cas. Ins. Co.,* 207 F.2d 214 (D.C.Cir.1953); *Hindel v. State Farm Mut. Auto Ins. Co.,* 97 F.2d 777 (7th Cir. 1938); *Vollmer v. Fargo–Anchor Moving & Storage, Inc.,* 288 So.2d 523 (Fla.App.1974); *Commercial Standard Ins. Co. v. McKissack,* 153 S.W.2d 997 (Tex.Civ.App.1941); *Fidelity & Casualty Co. of New York v. Jacks,* 231 Ala. 394, 165 So. 242 (1936). In the absence of similar evidence of a legislative intent to impose absolute liability, we decline to place such an onerous burden upon insurance carriers by judicial fiat.

Order affirmed.

under the enabling act in question, rather than the Insurance Commission, could impose such a duty on an organization it does not regulate, we do believe that such a power, if it exists, should be exercised by the P.U.C. in a much less ambiguous fashion.