PREFERRED RISK MUTUAL INSURANCE COMPANY, Plaintiff-Counterdefendant and Appellee, *v.* UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant-Counterplaintiff and Appellant.— (CHICAGO GOSPEL MISSION *et al.*, Defendants.)

First District (4th Division)   No. 78-818

Opinion filed October 11, 1979.

Goldenson, Kiesler, Berman & Brenner, of Chicago (Marvin D. Berman and Robert L. Kiesler, of counsel), for appellant.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (John L. Kirkland, D. Kendall Griffith, and Stephen R. Swofford, of counsel), for appellee.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

An action for declaratory judgment was brought to determine whether the automobile liability insurance policy of plaintiff and counterdefendant Preferred Risk Mutual Insurance Company (hereinafter Preferred Risk), or the general liability insurance policy of defendant and counterplaintiff United States Fidelity and Guaranty Company (hereinafter USF&G), provided coverage for the defense and liability of the named insured, Chicago Gospel Mission (hereinafter Mission),

under both policies in connection with a claim for injuries suffered by Roman Westbrooks.

The trial court rendered a decision in favor of Preferred Risk and against USF&G, and it is from said declaratory judgment order that this appeal was taken. We affirm the trial court's holdings in favor of Preferred Risk and against USF&G, but reverse the judgment for attorneys' fees in the declaratory judgment action.

The issues presented for review are (1) whether the accident involving Roman Westbrooks arose out of the "ownership, maintenance or use" of the church bus or "operations necessary or incidental to such transportation" and (2) whether the court erred in awarding attorney's fees to the Mission in connection with its representation in the declaratory judgment action.

On June 4, 1972, Roman Westbrooks, then 11 years old, was attending Sunday school at the Mission. He had been picked up that morning by a school bus owned and operated by the Mission and taken to Sunday school where he attended class. When the class was dismissed, the students left the building and began boarding the school buses to return home.

Roman Westbrooks testified (as contained in a deposition that was taken and admitted into evidence) that he walked out of the Mission, located on the south side of Madison Street, in Chicago, and went immediately to the same bus that took him to school earlier that day. The door of the bus was open and some students had already boarded. He took a seat in the rear of the bus by himself. He stated that he remained in the bus between 1 and 5 minutes when he saw his brother, Boysie, about to enter a station wagon driven by one of the Sunday school teachers. The station wagon was parked on the north side of Madison Street, approximately across from the bus. Roman further testified that he got up from his seat and walked off the bus. Then, he walked along the sidewalk to the rear of the bus and waited for traffic to clear. He looked both ways before crossing the street and as he crossed he was struck by a city of Chicago police car.

Roman Westbrooks, through his father, filed suit in the circuit court of Cook County against the Mission, the city of Chicago, and the police officer whose vehicle struck him. The Mission tendered the defense of that lawsuit to both USF&G and Preferred Risk.

On December 7, 1976, a judgment of $72,500 was returned in favor of Roman Westbrooks and against all parties defendant in said cause of action.

In September 1977, the judgment entered on the verdict of $72,500 was vacated in accordance with a settlement agreement under which USF&G and Preferred Risk agreed to pay the sum of $14,500 each on

behalf of the Mission in full satisfaction of its liability for Roman Westbrooks' claim. However, the settlement agreement did not affect the rights of USF&G and Preferred Risk to litigate the issue of which policy afforded coverage for the accident of Roman Westbrooks.

A complaint was filed in the circuit court of Cook County for declaratory judgment by Preferred Risk against USF&G.

The discovery depositions of Roman Westbrooks and Kenneth Bosgraf, the bus driver, were admitted into evidence in light of the fact they did not appear in court at the time trial was scheduled to commence.

Kenneth Bosgraf's testimony as contained in his discovery deposition was that he was a volunteer worker for the Mission. On the day of the accident, he was driving a school bus which transported children to and from Sunday school class. He returned to the bus before the classes had ended and was on the bus when the students began boarding. He stated he did not leave the bus any time before the accident involving Roman Westbrooks occurred, and that he was on the bus at the moment of the accident. He could not remember whether a boy the age of Roman Westbrooks left the bus before the accident occurred. Although, he also stated that on the date of the accident he did not know Roman Westbrooks and would not have recognized him if he saw him. He first became aware of the accident when he heard the sound of tires from the police car, at which time he was in the driver's seat of the bus. He also stated that it was his practice to question children who after boarding the bus attempted to leave before the bus left the Sunday school for its return route home.

Anna Marie Rhodes was called to testify by Preferred Risk as a witness to the accident. She testified that she was also a student at the school on June 4, 1972. When the session was over, she left the Mission and was standing in front of the building on Madison Street where she was waiting for a different bus to pick her up. She testified that Roman Westbrooks stood beside her for approximately 5 minutes, and when he ran across the street to join his brother, Boysie, at the station wagon, he was struck by the police car. She did not see him get on or off the bus during the time he stood next to her. She further stated that Roman was not on the bus before he stood by her because he came from behind her, which was from the direction of the church and not the bus.

At the close of all the evidence, the trial court entered a declaratory judgment order which held USF&G liable to the Mission for the accident. It was further ordered that USF&G pay one-half the defense costs, including attorneys' fees in the personal injury case; also, that Preferred Risk and USF&G reimburse the Mission on a 50-percent basis for all attorneys' fees in defense of the declaratory judgment action.

USF&G contends on appeal that the automobile liability policy of Preferred Risk should have afforded the coverage to the Mission for the accident. Preferred Risk's policy contained language that provided coverage for bodily injury arising out of the ownership, maintenance or use of the automobile, and also for operations necessary or incidental to such transportation. USF&G believes that its policy on the Mission, which provides coverage for bodily injury or property damage *excluding* coverage for such injuries that would arise out of the use or operation of an automobile, cannot be used to impose liability on it.

USF&G contends that the injury to Roman Westbrooks outside the bus is covered by Preferred Risk's policy, since the injured party's activity is incidental to the use of the vehicle. However, Preferred Risk asserts that the circumstances surrounding the victim's accident do not constitute any "use" of the bus within the meaning of its policy. Preferred Risk states that the "Church Bus Endorsement" section of the policy defines *use* of the bus as "transportation" and even if Roman's alleged presence on the bus could be considered as "incidental" to such transportation the policy would still be inapplicable.

In analyzing these two arguments, we refer to one of the cases cited by USF&G, *Earl W. Baker & Co. v. Lagaly* (10th Cir. 1944), 144 F.2d 344, wherein a child was struck by a truck after alighting from the school bus. The court stated:

> "Opening the door of the bus and allowing the children to alight in those circumstances was an integral part in the operation of the bus." *Baker*, at 346.

In *Baker*, the bus was engaged in transporting students at the time of the accident which was not the case in this instance.

The facts in this case indicate the possibility that Roman Westbrooks was in the bus prior to the accident. Roman saw his brother getting into a car across the street from the bus and decided he would get a ride, too. He got off the bus and, while crossing the street, was hit by the police car. USF&G asserts that a school bus is more than a means of transportation for children; that the incidental activities also include the loading of, safe transport of, and discharge of children. In most cases, we would agree with this statement, but we cannot do so in this case. In this instance, we would be construing the terms of the policy too broadly. The bus had not even begun to take the children home. The students had just been released from class; some were waiting for another bus to arrive, and others were beginning to board the bus in which Roman Westbrooks would ride. We cannot hold that such a factual situation would create liability because of a clause in the policy referring to "operations necessary or incidental" to transportation. USF&G contends that the

Preferred Risk policy through the church bus endorsement goes further than an ordinary automobile policy. However, that endorsement relates totally to transportation and, therefore, cannot be applied until transportation has commenced. At the time of the occurrence, transportation had not yet begun and, therefore, the provisions of the policy were not applicable.

Preferred Risk states that other cases closely related to this one involve disputes arising from accidents occurring during the loading and unloading of vehicles. It cites cases where auto liability policies do not provide coverage unless there is a clear causal link between the use of the vehicle for loading and unloading and the accident. In turn, USF&G refers to Preferred Risk's policy as being more extensive and, therefore, such analogies do not apply.

It is not necessary for us to reach a decision on this issue, since we found that the clause on which USF&G relied would not negate its liability.

USF&G contends that since much of the testimony involving the accident was by deposition rather than by oral evidence, the appellate court may make its own findings of fact and is not bound by the trial court's judgment.

USF&G cites *Inter-Insurance Exchange v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518, to support its position.

The trial court, in the instant case, found that Roman's conduct took place totally without the confines of the bus, but did take place as a result of his attendance at the church Sunday school. However, the trial court did not make an express finding as to whether Roman was ever on the bus. The court also found that the Preferred Risk policy did not apply because "there was no transportation of the child at this point in time," referring to the time of the accident.

The evidence produced at the trial was conflicting. Roman Westbrooks stated in his deposition that he was on the bus; Kenneth Bosgraf, whose testimony was also received by deposition, did not remember Roman's presence on the bus. Anna Marie Rhodes, who gave in-court testimony, testified that when Roman approached, he came from behind her from the direction of the church and not from the direction of the bus.

In *Inter-Insurance Exchange v. Travelers Indemnity Co.* (1965), 57 Ill. App. 2d 17, 206 N.E.2d 518, the court held that the manifest weight of the evidence rule is not appropriate where credible evidence on a material issue is divided equally between written and oral testimony. However, the court went on to state:

"[W]e do believe something more is required to set aside the

findings of the trial court than the mere fact that a court of review might have reached a different conclusion." *Inter-Insurance Exchange*, 57 Ill. App. 2d 17, 27.

In a more recent case, *General Casualty Co. v. Elam* (1972), 8 Ill. App. 3d 215, 225-26, 289 N.E.2d 699, 706-07, the court reiterated the holding of the *Inter-Insurance Exchange* court, which stated that when testimony is equally divided between oral and written the court's resolution of a factual dispute should not be disturbed if substantial evidence exists to support it. Although, in the present case, the trial court did not make any express findings of fact, its judgment is entitled to all reasonable presumptions in its favor. *Stony Island Church of Christ v. Stephens* (1977), 54 Ill. App. 3d 662, 668, 369 N.E.2d 1313, 1318.

■■ We find that substantial evidence exists to support the conclusions reached by the trial court, and, allowing reasonable presumptions in the court's favor, we hold that the USF&G policy covers the accident.

USF&G also contends that attorneys' fees may only be imposed where there is a contractual or statutory provision allowing such fees. We agree with USF&G on the issue of attorneys' fees.

In the trial court's declaratory judgment order, it declared that the Mission was entitled to reimbursement for all attorneys' fees incurred in the defense of the declaratory judgment action. The court ordered Preferred Risk and USF&G to each reimburse the Mission for 50 percent of its attorneys' fees. Both Preferred Risk and USF&G have appealed that portion of the order.

■■ The fees incurred in the defense of the underlying personal injury suit are not in dispute. Both companies' policies entitled the Mission to a defense for any action brought against it alleging liability for bodily injury. However, both companies contend that their policies do not provide for payment of attorneys' fees to the Mission in a coverage dispute.

> "The general rule is that, in the absence of a statute or an agreement of the parties, the successful party may not recover attorney's fees or the costs of the litigation." *Hamer v. Kirk* (1976), 64 Ill. 2d 434, 437, 356 N.E.2d 524, 525.

■■ Both parties contend that there was not an agreement to pay such attorneys' fees within the policy nor was there any other agreement providing for such payment. The only other basis that would allow recovery of attorneys' fees in this instance would be statutory. We do not find a statute that would allow attorneys' fees to the Mission. After reviewing the record, it appears that in the declaratory judgment action the Mission was joined as a nominal and necessary defendant. It does not appear that the Mission's rights could have been prejudiced by this suit.

Therefore, absent a statute or agreement awarding the Mission attorneys' fees, we find the trial court was in error in declaring the Mission's right to fees in the defense of this case.

The judgment of the trial court is affirmed in part and reversed in part.

Affirmed in part; reversed in part.

JIGANTI, P. J., and LINN, J., concur.