675 A.2d 279

LEBANON COACH COMPANY, Appellee

v.

CAROLINA CASUALTY INSURANCE COMPANY; County of Lebanon Transportation Authority (Colt); City of Lebanon; Lebanon School District; Commonwealth of Pennsylvania, Department of Transportation; Beth McKinney; Paula Jo Lehman, a Minor, by Her Parents and Natural Guardians, Patricia M. Lehman and Willard Lehman; Patricia M. Lehman and Willard Lehman, Individually; and Fireman's Fund Insurance Company, Appellees.

Appeal of Paula Jo LEHMAN, a Minor, by Her Parents and Natural Guardians, Patricia M. LEHMAN and Willard Lehman; Patricia M. Lehman and Willard Lehman, Individually, Appellants.

Superior Court of Pennsylvania.

Argued Oct. 25, 1995.

Filed April 10, 1996.

See also, 143 Pa.Cmwlth. 416, 599 A.2d 259.

4

Leslie M. Cyr, Philadelphia, for Fireman's Fund Insurance, appellee.

Kenneth C. Sandoe, and William H. Sturm, Jr., Myerstown, for appellants.

Robert B. Keys, Jr., Lebanon, for Lebanon Coach Co., appellee.

James T. Reilly, Lebanon, for Carolina Casualty, appellee.

Marc A. Hess, Lebanon, for McKinney, appellee.

Before CAVANAUGH, KELLY and HESTER, JJ.

KELLY, Judge:

In this appeal we must again consider the automobile insurance policy provision that provides coverage for only those accident claims resulting from the ownership, maintenance or use of a motor vehicle. Specifically, we must determine whether the injuries sustained by a minor after alighting from a bus transporting her to school resulted from the use of the bus and, therefore, whether the bus owner's insurer has a duty to defend and indemnify the operator of the bus covered under the owner's bus policy in an underlying tort action. In addition, we must decide whether a state or federal endorsement amends the bus operator's basic form automobile policy to afford coverage to a bus not specifically identified in the policy's declarations. Based on the reasoning set forth below, we hold that the bus owner's insurer has a duty to defend and

indemnify the bus operator under the circumstances of this case. Furthermore, we hold that neither endorsement expands the bus operator's basic policy to provide coverage for the bus. Accordingly, we reverse in part, affirm in part, and remand this matter for proceedings consistent with this opinion.

The relevant facts and procedural history of this appeal are as follows. On January 11, 1988, a bus owned by the County of Lebanon Transit Authority ("COLT") and operated under contract by Lebanon Coach Company ("Lebanon Coach") was transporting children to school.[1] The bus stopped on Cornwall Road at the intersection of Cornwall Road and Hauck Street in the City of Lebanon to discharge its high school passengers. Paula Jo Lehman, then a minor, stepped off of the bus onto the sidewalk, walked the length of the bus to the corner crosswalk, and, walking behind the bus, began crossing the street to the high school. While the bus remained stationary, a car driven by Beth McKinney turned onto Cornwall Road from Hauck Street and struck Paula Jo, pushing her and then pinning her to the bus. Paula Jo sustained traumatic injuries as a result of the accident, culminating in the amputation of her right leg.

Paula Jo Lehman, by her parents, Patricia and Willard Lehman; and Patricia Lehman and Willard Lehman, individually ("the Lehmans"), filed a complaint on February 28, 1990, bringing an action in tort against Lebanon Coach, COLT, Commonwealth of Pennsylvania Department of Transportation, City of Lebanon, Lebanon School District, and Beth McKinney.[2] Lebanon Coach asked COLT's insurer, Carolina

1. The "Purchase of Service Agreement" between COLT and Lebanon Coach provided, *inter alia,* that COLT would supply the buses and liability insurance for the COLT-owned buses it was providing under the contract, and Lebanon Coach would supply the drivers and perform the necessary maintenance on the COLT-owned buses. (R.R. at 60a).

2. The trial court subsequently dismissed the City of Lebanon, the Lebanon School District, and COLT from the underlying tort action. The decision to dismiss COLT because of the authority's immunity from liability under the Political Subdivision Tort Claims Act was affirmed by the Commonwealth Court in *Lehman v. County of Lebanon Transportation Authority,* 143 Pa.Cmwlth. 416, 599 A.2d 259 (1991).

Casualty, to defend Lebanon Coach in the underlying tort action; however, Carolina Casualty refused. Lebanon Coach then filed the instant declaratory judgment action on September 20, 1990, against Carolina Casualty and COLT, asking the court to determine whether Carolina Casualty had a duty to defend Lebanon Coach in the underlying tort action. Carolina Casualty and COLT filed preliminary objections on October 24, 1990, which were overruled by an opinion and order filed on March 5, 1991. Lebanon Coach amended its complaint on January 28, 1991, to add defendants City of Lebanon, Lebanon School District, Commonwealth of Pennsylvania Department of Transportation, Beth McKinney and the Lehmans. Lebanon Coach's automobile insurer, Fireman's Fund, filed a petition to intervene, which the trial court granted in an order filed on November 13, 1991.

The Lehmans filed a motion for summary judgment against Carolina Casualty and Fireman's Fund; Fireman's Fund filed a cross-motion for summary judgment against all parties; and Carolina Casualty and COLT filed cross-motions for summary judgment against all parties. In its opinion filed December 23, 1994, the trial court held that neither Carolina Casualty nor Fireman's Fund had a duty to defend or indemnify Lebanon Coach in the underlying tort action, and, thus, granted summary judgment for the two insurers as well as COLT. This timely appeal by the Lehmans followed.

The Lehmans raise the following issues for our review:

I. WHETHER THE COURT BELOW ERRED WHEN IT CONCLUDED THAT CAROLINA CASUALTY INSURANCE COMPANY IS NOT REQUIRED TO DEFEND AND INDEMNIFY LEBANON COACH COMPANY AGAINST A CLAIM ARISING FROM A MOTOR VEHICLE ACCIDENT BECAUSE IT APPLIED AN INCORRECT STANDARD TO INTERPRET THE PHRASE "RESULTING FROM THE OWNERSHIP, MAINTENANCE OR USE OF A COVERED BUS" CONTAINED IN THE INSURANCE CONTRACT.

II. WHETHER THE COURT BELOW ERRED WHEN IT CONCLUDED THAT FIREMAN'S FUND INSURANCE CO. IS NOT REQUIRED TO DEFEND AND INDEMNIFY LEBANON COACH COMPANY AGAINST A CLAIM ARISING FROM A MOTOR VEHICLE ACCIDENT BECAUSE THE 'STATE' AND/OR 'FEDERAL' ENDORSEMENTS AMENDED THE BASIC FORM POLICY TO AFFORD COVERAGE TO BUSES NOT SPECIFICALLY IDENTIFIED IN THE DECLARATIONS.

(The Lehmans' Brief at 3).

■ At the outset, we note that our scope of review from a grant of summary judgment is plenary. *Phico Insurance Company v. Presbyterian Medical Services Corporation*, 444 Pa.Super. 221, 224, 663 A.2d 753, 755 (1995) (citations omitted); *Harrity v. Medical College of Pennsylvania Hospital*, 439 Pa.Super. 10, 19, 653 A.2d 5, 10 (1994), *allocatur denied*, —— Pa. ——, —— A.2d —— (1995) (citations omitted). The standard of appellate review states as follows:

[S]ummary judgment is properly entered where the pleadings, depositions, answers to interrogatories, and admissions, together with affidavits demonstrate that no genuine, triable issue of fact exists and that the moving party is entitled to judgment as a matter of law. The court must examine the record in the light most favorable to the non-moving party and resolve all doubts against the moving party. Moreover, the burden is on the moving party to prove that no genuine issue of material fact exists. Whether a claim is within a policy's coverage or barred by an exclusion is a question of law that may be decided by a motion for summary judgment. We are not bound by the trial court's conclusions of law, but may draw our own inferences and reach our own conclusions. We will reverse a grant of summary judgment only when the trial court has committed an error of law or abused its discretion.

*Butterfield v. Giuntoli*, 448 Pa.Super. 1, 10, 670 A.2d 646, 650 (1995) (citations omitted). *See also Phico Insurance Company v. Presbyterian Medical Services Corporation, supra* (cita-

tions omitted); *Aetna Casualty and Surety Company v. Roe*, 437 Pa.Super. 414, 419–20, 650 A.2d 94, 97 (1994) (citations omitted).

■ Whether a particular loss is within the coverage of an insurance policy is a question of law which may be decided on a motion for summary judgment in a declaratory judgment action. *Equibank v. State Farm Mutual Automobile Insurance Company*, 426 Pa.Super. 354, 359, 626 A.2d 1243, 1245 (1993), *allocatur denied*, 536 Pa. 642, 639 A.2d 28 (1994) (quotation omitted). *See also Alexander v. CNA Insurance Company*, 441 Pa.Super. 507, 510, 657 A.2d 1282, 1284 (1995), *allocatur denied*, 543 Pa. 689, 670 A.2d 139 (1995) (citing *Aetna Casualty and Surety Company v. Roe, supra* at 420, 650 A.2d at 98). Thus, it is subject to full review by this Court. *Gilderman v. State Farm Insurance Company*, 437 Pa.Super. 217, 224, 649 A.2d 941, 944 (1994), *allocatur denied*, 541 Pa. 626, 661 A.2d 874 (1995). In *Butterfield v. Giuntoli, supra*, we explained the principles governing the interpretation of insurance contracts as follows:

> When interpreting an insurance contract, words that are clear and unambiguous must be given their plain and ordinary meaning. Where ambiguities are found, they must be construed in the light most favorable to the insured. However, 'a contract is not rendered ambiguous by the mere fact that the parties do not agree upon the proper construction.' An ambiguity exists only when a policy provision is reasonably susceptible of more than one meaning.[ ] ... Whether a policy provision is ambiguous is a question of law to be decided by the courts.
> In order to decide whether a claim comes within the insurance policy's coverage, we must first ascertain the policy's scope. Moreover, the proper focus of this scrutiny is the reasonable expectations of the insured at the time of purchase. In determining the insured's reasonable expectations, we must examine the totality of the insurance transaction involved.

*Id.* at 14–15, 670 A.2d at 652–53 (citations and footnote omitted). *See also Gilderman v. State Farm Insurance Company, supra; Koenig v. Progressive Insurance Company*, 410 Pa.Su-

per. 232, 236–37, 599 A.2d 690, 691–92 (1992), *allocatur denied,* 531 Pa. 640, 611 A.2d 712 (1992) (citations omitted); *State Automobile Insurance Association v. Kuhfahl,* 364 Pa.Super. 230, 237–38, 527 A.2d 1039, 1042–43 (1987), *allocatur denied,* 517 Pa. 618, 538 A.2d 500 (1988) (citations omitted).

The Lehmans first contend that the trial court erred in granting summary judgment in favor of Carolina Casualty because the court erroneously concluded that the insurance company was not required to defend or indemnify Lebanon Coach in the underlying tort action. More specifically, the Lehmans assert that the trial court incorrectly interpreted and applied the insurance contract language "resulting from the ownership, maintenance or use of a covered bus" as it relates to the circumstances of the motor vehicle accident involving the COLT-owned bus and Paula Jo Lehman.

■ Carolina Casualty asserts that its insurance policy does not cover the bus accident involved in the underlying action and, therefore, Carolina Casualty is not required to defend Lebanon Coach for two reasons. The first reason is that the COLT policy with Carolina Casualty does not insure Lebanon Coach. The second reason for noncoverage, the insurer maintains, is that Paula Jo Lehman's injuries do not arise from the ownership, maintenance or use of a covered bus as required by the policy. Our examination of the totality of the insurance transaction involved, therefore, begins with the service contract between COLT and Lebanon Coach for the COLT-owned buses.

The Purchase of Service Agreement between COLT and Lebanon Coach covering the period from July 1, 1987, through June 30, 1988, states in pertinent part:

6. * * * *

LEBANON C & B agrees to pay all taxes, including but not limited to state, federal and local income tax. LEBANON C & B agrees to be responsible to pay all operating expenses; *excluded from such operating expenses shall be*

fuel, oil, vehicle physical damage and *liability insurance,* promotion, parts and tires.

\* \* \* \* \* \*

13. *Insurance*—COLT will maintain a minimum of Five Hundred Thousand Dollars ($500,000.00) liability insurance on its leased or owned vehicles.

(R.R. at 64a, 71a) (emphasis added).

The Lehmans maintain that COLT purchased the Carolina Casualty Bus Policy carrying $1,000,000 in damage liability to meet its obligation to Lebanon Coach. The bus involved in the January 11, 1988 accident is one of the vehicles specifically listed on the "Schedule of Covered Buses" in the Carolina Casualty policy. The policy also provides in pertinent part:

**A. WE WILL PAY.**

1. We will pay all sums the insured legally must pay as damages because of **bodily injury or property damage** to which this insurance applies, caused by an **accident** and resulting from the ownership, maintenance or use of a covered **bus.**

\* \* \* \* \* \*

**D. WHO IS INSURED.**

1. **You** are an **insured** for any covered **bus.**

2. Anyone else is an **insured** while using with **your** permission a covered **bus you** own or hire under a written agreement. . . .

(R.R. at 98a) (emphasis in original).

Carolina Casualty argues that its policy only covers COLT because Lebanon Coach is not a named insured. Moreover, the insurer asserts that even assuming, *arguendo,* COLT agreed to provide insurance for Lebanon Coach, coverage was precluded under the policy because of the following provision:

**C. WE WILL NOT COVER—EXCLUSIONS.**

This insurance does not apply to:

1. Liability assumed under any contract or agreement.

(R.R. at 98a). Carolina Casualty proffers that this exclusion places a limitation on the scope of coverage it is bound to provide Lebanon Coach because "Carolina Casualty has no duty to insure any liabilities COLT assumes by contract or agreement." (Carolina Casualty's Brief at 20). We will address both arguments in turn.

■ Under Pennsylvania's Motor Vehicle Financial Responsibility Law,[3] the vehicle's owner or registrant is responsible for maintaining financial responsibility for the vehicle. *See* Pa.C.S.A. § 1786.[4] It is the *vehicle* that is covered by the automobile policy, while an individual is covered only by nature of his function as the driver of that vehicle. *Cummings v. State Farm Mutual Automobile Insurance Company*, 408 Pa.Super. 381, 385, 596 A.2d 1138, 1140 (1991) (emphasis added). Instantly, COLT also agreed to maintain liability insurance on its vehicles in the Purchase of Service Agreement between itself and Lebanon Coach.[5] COLT was thus obligated by law and by contract to provide the insurance coverage for the bus it owned and provided under contract to Lebanon Coach. *See Clark v. Aetna Casualty and Surety Company*, 307 Pa.Super. 225, 453 A.2d 7 (1982) (owner of truck required by law and by contract to provide necessary insurance for leased truck).

COLT took out a bus policy through Carolina Casualty that specifically named the bus involved in the accident as a covered vehicle. COLT was a named insured under the policy. In addition, Lebanon Coach was an insured under the Carolina Casualty policy by virtue of the nature of its function as a permissive driver of the insured bus. We find that the language of the provision defining who is an insured under the Carolina Casualty policy is clear and unambiguous, and thus are required to give effect to the provision. *See Butterfield v. Giuntoli, supra; Alexander v. CNA Insurance Company, supra; Equibank v. State Farm Mutual Automobile Insurance Company, supra; Koenig v. Progressive Insurance Com-*

3. 75 Pa.C.S.A. § 1701 *et seq.*

4. For further discussion on this issue, *see infra* at 28–30.

5. *See* Purchase of Service Agreement (R.R. at 64a, 71a).

*pany, supra.* We conclude that Lebanon Coach was an insured under the Carolina Casualty policy while using a covered bus owned by COLT with COLT's contractual permission.

■ Furthermore, we conclude that the exclusion Carolina Casualty relies on to support its argument for non-coverage does not apply to this case. The United States District Court of the Middle District of Pennsylvania has explained the general principle underlying this type of exclusion clause as follows:

> [A] provision in a liability policy specifically excluding from coverage liability assumed by the insured under a contract not defined in the policy is operative—in the sense that it relieves the insurer of liability otherwise existing under the policy—only in situations where the insured would not be liable to a third party except for the fact that he assumed liability under an express agreement with such party, but does not relieve the insurer from liability under the policy where the liability of the insured assumed by the insured under an express contract with the third party is coextensive with the insured's liability imposed upon him by law....
>
> All the cases are based on the general principle that a contractual exclusion clause contained in an insurance liability policy is not operative in a situation where the insured would have been liable regardless of his contractual promises as an actively negligent wrongdoer to one merely passively negligent, or to one not at all negligent, but by statute or otherwise vicariously liable.

*Daily Express, Inc. v. Northern Neck Transfer Corporation,* 490 F.Supp. 1304 (M.D.Pa.1980) (citing ALR2d 1123 (1959)). *See generally The Hertz Corporation v. Smith,* 441 Pa.Super. 575, 657 A.2d 1316 (1995) (holding car lessee specifically contracted with car lessor for liability for any and all loss or damage to rental car, thus barring recovery from insurer under exclusion for liability assumed by contract); *Toombs NJ Inc. v. Aetna Casualty and Surety Company,* 404 Pa.Super.

471, 591 A.2d 304 (1991) (explaining that when additional coverage is purchased for contractually assumed liability, damages to which endorsement is directed is same as in original policy, thus precluding damages for breach of contract in broad comprehensive policy for bodily injury and property damage caused by occurrence).

Instantly, Carolina Casualty's claim that Lebanon Coach is asking COLT to assume Lebanon Coach's liability by contract, thus precluding coverage, *may* have been a defense applicable against COLT, but the defense is inapplicable against Lebanon Coach. Lebanon Coach did not file a declaratory judgment seeking indemnification from COLT. Rather, Lebanon Coach seeks a defense and indemnification from Carolina Casualty as an insured under the Carolina Casualty policy purchased by COLT pursuant to the Purchase of Service Agreement. Lebanon Coach has not assumed any liability by contract to a third party. Therefore, we determine the exclusion is inapplicable to this case.[6] Hence, the next step in our examination of the insurance transaction is to determine Carolina Casualty's duty to defend Lebanon Coach as an insured in the underlying tort action.

An insurer's duty to defend is a distinct obligation, different from and broader than its duty to provide coverage. *Phico Insurance Company v. Presbyterian Medical Services Corporation, supra* (citation omitted); *Aetna Casualty and Surety Company v. Roe, supra* at 421, 650 A.2d at 98 (citation

---

**6.** Moreover, the underlying complaint against COLT alleged direct negligence by COLT for the authority's role in the events leading up to the January 11, 1988 automobile accident injuring Paula Jo Lehman. The trial court dismissed COLT from the underlying action based solely on the authority's immunity from liability under the facts of the case and the court's interpretation of the Political Subdivision Tort Claims Act. Whether a jury would ultimately found COLT directly negligent in the underlying tort action, thereby precluding Carolina Casualty's defense, need not be decided here, nor will it absolve Carolina Casualty of its obligation to Lebanon Coach. *See Daily Express v. Northern Neck Transfer, supra* (holding truck lessor's liability to truck lessee existed without parties' express indemnity clause in lease, thus exclusion was inapplicable where Carolina Casualty alleged its insured, truck lessor, was precluded from coverage because lessor's liability was assumed under contract with truck lessee).

omitted); *D'Auria v. Zurich Insurance Company,* 352 Pa.Super. 231, 233, 507 A.2d 857, 859 (1986) (citations omitted). This obligation is fixed solely by the allegations in the underlying complaint. *Aetna Casualty and Surety Company v. Roe, supra* at 422, 650 A.2d at 98 (citations omitted).

 It is the nature of the claim and not the actual details of the injury that determines whether the insurer is required to defend. *Id.* (quoting *D'Auria v. Zurich Insurance Company, supra* at 234, 507 A.2d at 859). If the factual allegations of the complaint comprehend an injury which is *potentially* within the policy's scope, the insurer has a duty to defend. *Phico Insurance Company v. Presbyterian Medical Services Corporation, supra* (citations omitted); *Aetna Casualty and Surety Company v. Roe, supra* (citations omitted). "Thus, the insurer owes a duty to defend if the complaint against the insured alleges facts which would bring the claim within the policy's coverage if they were true." *Id.* (quoting *D'Auria v. Zurich Insurance Company, supra* at 235, 507 A.2d at 859). *See also Phico Insurance Company v. Presbyterian Medical Services Corporation, supra; State Automobile Insurance Association v. Kuhfahl, supra* at 234, 527 A.2d at 1041.

The Lehmans' tort complaint alleges in relevant part:

10. At all times material hereto, the Defendants, Lebanon School District, County of Lebanon Transit Authority, a/k/a COLT, and Lebanon Coach Company, jointly and/or severally exercised care, custody and control of the motor vehicles or bus in question *by designating routes and loading and unloading zones for said bus.*

. . . . .

13. In regard to all of said Defendants, it is believed and therefore averred that the dangerous condition at the site of the accident, as more specifically set forth hereafter, created a reasonably foreseeable risk of the kind of injury that was incurred and that *all Defendants had actual notice or could reasonably be charged with notice under the circumstances of the dangerous condition at a sufficient time prior*

*to the accident to have taken measures to protect against the aforesaid dangerous condition.*

14. On January 11, 1988, at approximately 7:49 a.m., a bus owned by the Defendant, County of Lebanon Transit Authority, a/k/a COLT, and operated by an agent, servant, workman or employee of the Defendant, Lebanon Coach Company, was carrying a bus load of school children to be dropped off for school . . .

15. At or about the above date, time and place, the Defendant, County of Lebanon Transit Authority, a/k/a COLT, owned the bus in question and the Defendant, Lebanon Coach Company, supplied the driver and maintained the bus in question.

16. The Defendants, County of Lebanon Transit Authority, a/k/a COLT, and Lebanon Coach Company, entered into a contract whereby County of Lebanon Transit Authority, a/k/a COLT, would supply the busses (sic) and Lebanon Coach Company would supply the drivers and maintain said busses (sic).

. . .

40. At all times material hereto, Defendant, Lebanon Coach Company, was a common carrier and owed to all passengers a duty to exercise the highest degree of care to provide for a passenger's safe journey, including the obligation to furnish a safe means of ingress and egress and further owed a duty to exercise the strictest vigilance in assuring the passengers are safely picked up and delivered at stops along the route.

41. In dealing with school children under the age of eighteen (18), the Defendant, Lebanon Coach Company, a common carrier, is under an even higher degree of care to ensure safe passage, including entering and alighting from said bus.

[42. At the date, time and place aforesaid, the school bus in question was loaded with school children who were being delivered to school.]

43. The Defendant, Lebanon Coach Company, a common carrier, breached its duty to the minor Plaintiff, Paula Jo Lehman, in that it:

(a) Established an unsafe bus route which required the minor Plaintiff, Paula Jo Lehman, and other[s] similarly situated, to cross Cornwall Road, a busy, unsafe highway knowing that no crossing protection existed at said stop;

(b) Failed to establish a safe place for pick up, transportation and delivery of children, including the minor Plaintiff, Paula Jo Lehman, to schools;

(c) Failed to discharge the minor Plaintiff, Paula Jo Lehman, and others similarly situated on school grounds off the busy aforesaid highway as had been done in the past;

(d) Failed to alert the City, Commonwealth and School District about the dangerous and unsafe loading and unloading zone established at the site of the accident and failing to relocate said zone until proper and adequate traffic and crossing controls could be implemented; and

(e) Failed to comply with applicable State and Federal law and regulations concerning proper identification of a school bus or a bus used primarily for school purposes.

(Trial Court Opinion, filed December 23, 1994, at 8–10) (emphasis in opinion).

Citing from its earlier opinion, the trial court stated:

The clear focus of the motor vehicle cases under the [Policitical Subdivisions Tort Claim] Act has been the involvement of the motor vehicles *as motor vehicles* in accidents. In no cited case has a waiver to immunity been found where the plaintiff has alleged the sole involvement of the governmental motor vehicle lay in carrying a passenger to an area for discharge that the governmental agency knew or should have known was unsafe. The Complaint alleges the bus driver did nothing wrong other than allowing [appellant] to leave the bus in a certain place. The Complaint alleges COLT's liability arises solely from "designating routes and loading and unloading zones" for the bus.

The McKinney car would have inflicted the same unfortunate injuries upon minor [appellant] had it pushed her into any static object—a lamppost, a brick wall or a fire hydrant. The car happened to thrust minor [appellant] into a large metal object mounted on tires, called a bus. [Appellant] has not alleged the nature of the large metal object had anything to do with her injuries. She has alleged the bus owner, COLT, [and Lebanon Coach] should not have left her or any other children get off the bus at the accident site.

The "motor vehicle" exception to immunity does not apply to these facts. . . .

(Trial Court Opinion at 7) (citing *Lehman v. County of Lebanon Transportation Authority*, No. 89–01796, November 9, 1990, Opinion by Eby, J. at 9–10).[7] The trial court concluded that the Lehmans' claims arose from administrative decisions by the defendants COLT and Lebanon Coach and that the accident involving Paula Jo Lehman was not the result of the "ownership, maintenance or use of a covered bus."[8] Relying on *Metzel v. State Farm Mutual Automobile Insurance Com-*

---

7. In *Lehman v. County of Lebanon Transportation Authority*, 143 Pa. Cmwlth. 416, 599 A.2d 259 (1991), the Lehmans argued that COLT lacked immunity because the motor vehicle exception applied to the Political Subdivision Tort Claims Act. Under 42 Pa.C.S.A. § 8542(b)(1), liability may be imposed on a local agency when the agency is engaged in "the operation of any motor vehicle." *Id.* at 420, 599 A.2d at 261. Because the motor vehicle exception must be "narrowly interpreted given the expressed legislative intent to insulate political subdivisions from tort liability," both the trial court and Commonwealth Court were constrained to strictly construe the crucial term "operation." *Love v. City of Philadelphia*, 518 Pa. 370, 374, 543 A.2d 531, 532 (1988) (quotation omitted).

8. The trial court stated

[t]he Lehmans claim that Lebanon Coach 'established an unsafe bus route,' 'failed to establish a safe place for pick up, transportation and delivery of children,' 'failed to discharge the minor Plaintiff, Paula Jo Lehman ... on school grounds,' 'failed to alert the City, Commonwealth and School District about the dangerous and unsafe loading and unloading zone established at the site of the accident and failing to relocate said zone,' and 'failed to comply with applicable State and Federal law and regulations concerning proper identification of a school bus.' None of these acts involve 'operation, maintenance or use of a motor vehicle.'

(Trial Court Opinion at 11–12).

*pany*, 389 Pa.Super. 30, 566 A.2d 600 (1989), *allocatur denied*, 525 Pa. 601, 575 A.2d 567 (1990), the trial court found no "causal connection" between the bus and the accident.[9]

▇▇▇ We reject the trial court's interpretation of the policy language as it applies to the facts of the underlying tort action and the Lehmans' allegations against Lebanon Coach. Instead, we conclude that Paula Jo Lehman's injuries are causally connected with the use of a covered bus for the following reasons.

Initially, we note that a number of cases have interpreted similar language in insurance policies in various contexts. One such line of cases involves a determination of whether the injured person was an "occupant" of the vehicle. *See e.g., Utica Mutual Insurance Company v. Contrisciane*, 504 Pa. 328, 473 A.2d 1005 (1984) (holding Mr. Contrisciane was "occupying" his insured vehicle when he was struck and killed by an uninsured vehicle after leaving his car to walk over to patrol car with his driver's information as directed by police officer); [10] *Frain v. Keystone Insurance Company*, 433 Pa.Su-

**9.** In *Metzel v. State Farm, supra*, a panel of this Court was interpreting a provision of the Pennsylvania No–Fault Motor Vehicle Insurance Act as it related to an accident involving a motor home being used for overnight lodging when a faulty propane regulator valve caused an explosion. The motor home had been removed from the highway, parked in a stationary position with its engine shut off, and was being used for living purposes when the accident occurred. Because the motor home was not being used as a vehicle at the time of the accident within the meaning of the No–Fault Act, we concluded that the accident did not arise from the "maintenance and use of a motor vehicle." *Id.* at 35–36, 566 A.2d at 603. The factual situation here is readily distinguishable from that presented in *Metzel v. State Farm, supra*. Instantly, although the bus remained stationary while the children alighted and crossed the street to the school, the bus remained on the roadway, the motor was still running, and the bus had not ceased in its operation as a vehicle transporting children to school.

**10.** In *Utica Mutual Insurance Company v. Contrisciane, supra,* our Supreme Court held that whether an injured party was "occupying" a vehicle within the meaning of a policy may be determined using the following criteria:

(1) there is a causal relation or connection between the injury and the use of the insured vehicle;

per. 462, 640 A.2d 1352 (1994) (holding Mrs. Frain was "occupying" her friend's parked car when she stumbled over flowerbed and sustained injuries to avoid being run over by oncoming tractor trailer before entering friend's car); *Fisher v. Harleysville Insurance Company,* 423 Pa.Super. 362, 621 A.2d 158 (1993), *allocatur denied,* 536 Pa. 624, 637 A.2d 285 (1993) (minor was "occupant" of friend's truck while minor was unloading hunting rifle in front of truck in preparation to enter truck and was struck by oncoming vehicle); *McGilley v. Chubb & Son, Inc.,* 369 Pa.Super. 547, 535 A.2d 1070 (1987), *allocatur denied,* 520 Pa. 601, 553 A.2d 964 (1988) (holding taxi cab driver was not "occupying" his cab when cab driver had parked at cab stand behind several cabs in front of Warwick Hotel, turned off ignition as well as cab's dome light, took keys, exited cab, and walked to cab in front of him to "bum a cigarette" when he was struck by SEPTA bus).[11]

In reversing, we find it unnecessary to determine whether Paula Jo Lehman continued to be an "occupant" of

> (2) the person asserting coverage must be in a reasonably close geographic proximity to the insured vehicle, although the person need not be actually touching it;
> (3) the person must be vehicle oriented rather than highway or sidewalk oriented at the time; and
> (4) the person must also be engaged in a transaction essential to the use of the vehicle at the time.
> *Id.* at 336, 473 A.2d at 1009. In that case, the Supreme Court reasoned, *inter alia,* that "it was the *use* of the vehicle which precipitated the whole unfortunate series of events." *Id.* (emphasis added).

11. In *McGilley v. Chubb & Son, Inc., supra,* this Court concluded that the facts demonstrated that Mr. McGilley had severed his relationship with his cab and, thus, was not an occupant at the time of the accident. We also stated, however, that Mr. McGilley would still be covered under the cab's policy as a person injured "while using an owned automobile" if the cab policy's definition of "insured" applied rather than that of the No–Fault Act. We explained,

> [t]he term 'using' is accorded a more liberal interpretation than the term 'occupant.' Courts generally apply a causal analysis in determining whether a claimant was using a motor vehicle. The test is generally that there must be a sufficiently close connection between the injuries sustained and the insured vehicle. While Mr. McGilley was not an occupant of the Mar–Jan Cab, the causal connection between the injuries sustained and the cab were sufficiently close to satisfy the 'use' requirement.

*Id.* at 559 n. 13, 535 A.2d at 1076 n. 13 (citations omitted).

the bus after she had alighted from the bus and was crossing the street behind the bus to get to her school. *See Walker v. Port Authority of Allegheny County,* 323 Pa.Super. 427, 470 A.2d 993 (1984) (holding Port Authority required to provide basic loss benefits under Section 204(a)(4) of No–Fault Act regardless of whether passenger continued to be "occupant" as bus was "involved in an accident" when passenger struck by passing vehicle after alighting from bus). Assuming, without deciding, that she was no longer an occupant of the bus, Miss Lehman's injuries were nevertheless sustained as a result of the "use" of the COLT-owned bus driven by Lebanon Coach. "[T]he phrase 'arising out of means causally connected with, not proximately caused by.' 'But for' causation, *i.e.,* a cause and result relationship, is enough to satisfy this provision of the policy." *Lucas–Raso v. American Manufacturers Insurance Company,* 441 Pa.Super. 161, 166, 657 A.2d 1, 3 (1995), *allocatur denied,* 542 Pa. 654, 668 A.2d 1119 (1995) (quotation omitted). The purpose of automobile insurance is to compensate for vehicle-caused injuries. *Id.* at 167, 657 A.2d at 4 (citation omitted); [12] *Cummings v. State Farm Mutual Automobile Insurance, supra* at 384, 596 A.2d at 1139 (citation omitted).[13] Thus, there must be a link between the injury

12. In *Lucas–Raso v. American Manufacturers Insurance Company, supra,* Ms. Lucas–Raso, a shopping center employee, fell in a hole in the center's parking lot as she was walking around her car in preparation to enter her car and drive to the bank. This Court determined that although the appellant was vehicle oriented at the time of her fall, she failed to establish the causal connection between her injury and the use of her insured vehicle. *See also Roach v. Port Authority of Allegheny County,* 380 Pa.Super. 28, 550 A.2d 1346 (1988) (no causal connection between injury and use of vehicle where bus passenger was injured as result of fight between two other passengers on bus); *Alvarino v. Allstate Insurance Company,* 370 Pa.Super. 563, 537 A.2d 18 (1988) (no causal connection where minor was bitten by dog while both were riding in van). *But see Sommers v. Hessler,* 227 Pa.Super. 41, 323 A.2d 17 (1974) (contract carrier found negligent for failure to supervise based on its contractual obligation to passengers where minor passenger on school bus injured in "spit ball fight" between several school bus passengers).

13. In *Cummings v. State Farm Mutual Automobile Insurance, supra,* Mr. Cummings was injured as a result of being physically assaulted by the owner of a parked car that Mr. Cummings hit with his car. The injuries occurred after Mr. Cummings had stepped out of his car to

sustained and the use of the motor vehicle. *Id.* We have interpreted the phrase "use of a motor vehicle" to mean the use of a motor vehicle *as a vehicle,* including, incident to its use as a vehicle, occupying, entering into, or alighting therefrom. *Smith v. United Services Automobile Association,* 392 Pa.Super. 248, 252, 572 A.2d 785, 787 (1990), *appeal dismissed,* 529 Pa. 24, 601 A.2d 276 (1992) (quotation omitted) (emphasis in original).

'The term 'use' has been defined as the general catchall of an omnibus insurance clause, designed and construed to include all proper uses of the vehicle not falling within other terms of definition such as ownership and maintenance.' *State Farm Mutual Automobile Insurance Co. v. O'Brien,* 380 F.Supp. 1279 (1974). 'The word 'use' in connection with the words ownership and maintenance . . . , must be taken in its usual meaning of use of a motor vehicle.' *Assurance Company of America v. Bell,* 108 Ga.App. 766, 772, 134 S.E.2d 540 (1963).

Of course if the term 'use' is construed to embrace all of its possible meanings and ramifications, practically every activity of mankind would amount to a 'use' of something. However the term must be considered with regard to the setting in which it is employed.

*State Farm Mutual Automobile Insurance Co. v. O'Brien, supra* at p. 1281, citing *Great American Indemnity Co. of New York v. Saltzman,* 213 F.2d 743 (8th Cir.1954).

*Erie Insurance Exchange v. Transamerica Insurance Company,* 516 Pa. 574, 582, 533 A.2d 1363, 1367 (1987).

Carolina Casualty argues that under this analysis, the result in *Presbyterian–University of Pennsylvania Medical Center*

assess any damage to the other car and the other car's owner attacked him. This Court determined that Mr. Cummings was precluded from recovering from his automobile insurer because his injuries were not "vehicle-caused," but rather were the result of a physical attack after use of the motor vehicle had ceased. *See also Smith v. United Services Automobile Association,* 392 Pa.Super. 248, 572 A.2d 785 (1990), *appeal dismissed,* 529 Pa. 24, 601 A.2d 276 (1992) (injuries were not "vehicle-caused," but result of intentional act of third-party where minor bicyclist collided with tree after child on haywagon threw hay in bicyclist's face).

*v. Keystone Insurance Company,* 251 Pa.Super. 71, 380 A.2d 381 (1977),[14] controls the outcome of the instant case. We disagree. Rather, we rely on two cases which are more analogous to the facts of the case before us, *Tyler v. Insurance Company of North America,* 311 Pa.Super. 25, 457 A.2d 95 (1983) and *State Automobile Insurance Association v. Kuhfahl,* 364 Pa.Super. 230, 527 A.2d 1039 (1987), *allocatur denied,* 517 Pa. 618, 538 A.2d 500 (1988).

In *Tyler v. Insurance Company of North America, supra,* Ms. Tyler was a bus passenger injured when she was struck by a motorcycle passing the bus on the right after she had taken three or four steps from the bus which had stopped five feet from the shoulder of the road to discharge passengers. Ms. Tyler brought an action against the bus company's no-fault insurer for basic loss benefits under the Pennsylvania No–Fault Motor Vehicle Insurance Act.[15] The trial court found that Ms. Tyler was a pedestrian at the time she was struck and, thus, held that the bus company's insurer was not the proper source of the benefits. In reversing, this Court took an additional step that we decline to take instantly by holding that Ms. Tyler continued to "occupy" the bus after alighting from it because she had not yet severed all connection with the bus. The *Tyler* Court stated "[t]he bus company had a duty, not only to carry her safely, but to afford her an opportunity to alight safely. Where, as here, the bus had stopped five feet from the safety of the shoulder, Carol Tyler continued to be vehicle oriented until she reached the shoulder of the road." *Id.* at 31, 457 A.2d at 98.

**14.** In *Presbyterian–University v. Keystone, supra,* the injured party was driven to the hospital (appellant) by his wife in a car insured by Keystone (appellee). After an orderly had removed the person from his car but before placing him in a wheelchair, the orderly dropped the person to the ground, with severe injuries resulting. The hospital petitioned for a declaratory judgment against Keystone, asking the court to interpret the "loading and unloading" clause of the insurance policy as to require Keystone to defend the hospital in the underlying action brought against the hospital by the injured party. This Court affirmed the trial court's decision that there was no direct connection between the use of the automobile and the injury.

**15.** 40 P.S. § 1009.101 *et seq.*

In the instant case, we opine that Lebanon Coach had a duty to carry Paula Jo Lehman safely to her destination and afford her an opportunity to alight safely. Whereas in *Tyler v. Insurance Company of North America, supra,* the place of safety where the bus company's duty to its passenger ended was the shoulder of the road, instantly, we conclude that Lebanon Coach's duty to minor Paula Jo Lehman continued until Miss Lehman reached the safety of the other side of the immediate street she had to cross to reach her school.[16] "[Lebanon Coach] by contract accepted a grave responsibility to carry children to and from school, and in discharge of this duty it was bound to exercise the highest practical degree of care." *Vogel v. Stupi,* 357 Pa. 253, 259, 53 A.2d 542, 545 (1947).

In *State Automobile Insurance Association v. Kuhfahl, supra,* the automobile insurer asked the court to determine whether it had a duty to defend the Kuhfahls, the insureds, in an underlying tort action brought after a neighbor child that the Kuhfahls were transporting home from school was injured by a second vehicle after the child alighted from the Kuhfahl vehicle and attempted to cross the street. In that case, after looking at a complaint and policy language similar to the claims and policy language involved in the case *sub judice,* this Court upheld the trial court's decision that the child's injuries were causally connected to the use of the Kuhfahl vehicle and,

16. It is well settled in this Commonwealth that a common carrier owes its passengers the highest degree of care and diligence in carrying them to their destination, in setting them down at the terminus of their journey, and in enabling them to alight safely. *O'Malley v. Laurel Line Bus Company,* 311 Pa. 251, 254–55, 166 A. 868, 869 (1933). Moreover, while carrying children to and from school, a bus company is "bound to use every reasonable caution and care for the safety of these children, either while they are riding in the bus or alighting from the bus or leaving the immediate vicinity of the bus at the completion of their journey." *Vogel v. Stupi,* 357 Pa. 253, 257, 53 A.2d 542, 544 (1947). In that case our Supreme Court upheld jury verdicts against both the company operating the bus by contract as well as the driver of the vehicle which struck a minor after the minor had alighted from the bus and was crossing the state highway to reach his home. *See also Sommers v. Hessler,* 227 Pa.Super. 41, 323 A.2d 17 (1974) (carrier held to highest degree of care, regardless of whether it is common or contractual carrier).

therefore, the automobile insurer was required to defend the Kuhfahls in the underlying action. Concluding that the Kuhfahl car was not merely incidental to the child's injuries, we stated:

> [Benjamin's] location at the time the colliding car struck him was directly linked to where Mr. Kuhfahl stopped his car. Mr. Kuhfahl's 'use' of his vehicle involved the transportation of Benjamin from school back to his street, much as a school bus would. The only reason Benjamin was where he was when he was struck includes the Kuhfahl vehicle which at that time was deliberately used for the transporting of children.

*Id.* at 240–41, 527 A.2d at 1044.[17]

Similarly, Paula Jo Lehman's location at the time the McKinney car struck her was directly linked to where the Lebanon Coach driver stopped the bus. The only reason Miss Lehman was where she was when she was struck includes the COLT-owned bus operated by Lebanon Coach, which at the time was deliberately being *used* for transporting children to school.

We are also guided by two cases from other jurisdictions cited by the trial court. (Trial Court Opinion at 12). In *Beatty v. Charlotte–Mecklenburg Board of Education,* 99 N.C.App. 753, 394 S.E.2d 242 (1990), *appeal dismissed,* 329 N.C. 691, 406 S.E.2d 579 (1991), a minor suffered disabling head injuries after being struck by a truck while crossing a busy four-lane road to reach his waiting school bus at his assigned bus stop. The North Carolina appellate court held that the minor's injuries arose out of the ownership, maintenance or use of a vehicle owned or hired to transport pupils.

---

17. In *State Automobile Insurance Association v. Kuhfahl, supra,* issues of material fact remained concerning the parties' actions preceding the minor's injuries. The insurer in that case argued that it was too early to determine whether the insurer would be required to indemnify under the policy. This Court agreed and left the decision of indemnification for the jury. As there are no genuine issues of material fact in the case before us, we may decide whether Paula Jo Lehman's injuries are within the coverage of the Carolina Casualty policy as a matter of law. *See Alexander v. CNA Insurance Company, supra; Equibank v. State Farm Mutual Automobile Insurance Company, supra.*

Conversely, in *Preferred Risk Mutual Insurance Company v. United States Fidelity & Guaranty Company,* 77 Ill.App.3d 266, 32 Ill.Dec. 799, 395 N.E.2d 1180 (1979), the Illinois appellate court held that a minor's injuries did not arise out of the ownership, maintenance or use of a church bus. In that case, the injured minor and other students had just gotten out of Sunday School and were waiting next to the church bus that would take them home when the minor saw his brother getting into a car across the street. As the minor crossed the street to reach his brother, he was struck by an approaching police car. The court held that the facts of the case did not impose liability on the church bus insurer because the bus was not yet engaged in the "transportation" of students as defined under the terms of the policy. We disagree with the trial court's conclusion that *Preferred Risk Mutual Insurance Company v. United States Fidelity & Guaranty Company, supra,* supports a holding that Miss Lehman's injuries did not arise from the ownership, maintenance or use of a covered vehicle. Rather, we conclude the holdings are distinguishable based upon the fact-specific nature of each determination.

In *Faber v. Roelofs,* 311 Minn. 428, 250 N.W.2d 817 (1977), the Minnesota Supreme Court held that the injuries sustained when an elementary school student was run over by his school bus "arose out of the use" of the bus within the meaning of the automobile policy contrary to the contention that the injuries arose out of the school district's negligence with respect to bus routes and boarding procedures rather than out of the use of the bus. In that case, the minor had run out into the street alongside the bus to get to his bus stop, when he slipped and fell under the bus wheels. The court also rejected the insurer's claim that a finding of negligence on the part of the school bus owner or the bus driver was a prerequisite to holding that the accident arose out of the use of the bus. All that was necessary, the court explained, was a causal connection between the accident and the use of the insured bus.

In 1985, the Georgia Court of Appeals held that a student's injuries sustained when he was struck by a truck while crossing a road after alighting from his school bus arose from

the use of the bus within the meaning of an automobile policy issued to the school district. *Georgia Farm Bureau Mutual Insurance Company v. Greene,* 174 Ga.App. 120, 329 S.E.2d 204 (1985). The appellate court explained that "use" does not conclude until the bus stops operating as a school bus in relation to the children. While "use" of the bus does not continue until the children reach their ultimate destination, *i.e.* home, "use" does continue until each child has crossed any immediate road and is in a place of safety in the direction towards that destination. *Id.* We agree with this reasoning by the Georgia Court of Appeals and, accordingly, we adopt it herein.

For the foregoing reasons, we reverse the trial court's grant of summary judgment in favor of Carolina Casualty. Under the specific facts of this case, we hold that Paula Jo Lehman's injuries resulted from the "ownership, maintenance or use" of the COLT-owned bus, a covered vehicle under the Carolina Casualty policy, driven by the insured, Lebanon Coach. Therefore, Carolina Casualty has a duty to defend Lebanon Coach in the underlying tort action as well as to provide coverage should the jury find Lebanon Coach negligent at trial.

▮▮ In their second question presented, the Lehmans allege that the trial court erred in granting summary judgment for Fireman's Fund because the court erroneously concluded the insurer was not required to defend and indemnify Lebanon Coach in the underlying tort action. The Lehmans assert that this conclusion is erroneous because the state and federal endorsements amended the Fireman's Fund basic form policy to afford coverage. We cannot agree.

Lebanon Coach was insured by Fireman's Fund under a business auto policy in effect at the time of the accident. The policy stated in pertinent part:

PART IV—LIABILITY INSURANCE

A. WE WILL PAY.

1. We will pay all sums the insured legally must pay as damages because of bodily injury or property damages to

which this insurance applies, *caused by an accident and resulting from the ownership, maintenance or use of a covered auto.*

2. We have the right and duty to defend any suit asking for these damages. However, we have no duty to defend suits for bodily injury or property damages not covered by this policy....

D. WHO IS INSURED.

1. You are an insured for any covered auto.

2. While any covered auto is rented or leased to you and is being used by or for you, its owner or anyone else from whom you rent or lease it is an insured but only for that covered auto....

(Trial Court Opinion at 13) (emphasis in opinion).

Under the Fireman's Fund policy, only the vehicles specifically described on a schedule in the policy were "covered autos." The specifically described vehicles were three buses owned by Lebanon Coach. The Schedule of Covered Autos did not include the COLT-owned bus involved in the accident precipitating the underlying tort action.

The Lehmans do not dispute that the Fireman's Fund basic policy does not provide coverage for any liability arising out of the accident. Rather, the Lehmans proffer that both the "state endorsement" and the "federal endorsement" amend the basic policy to provide coverage for the accident. The "state endorsement" provides in relevant part:

1. The certification of the policy, as proof of financial responsibility under the provisions of any State motor carrier law or regulations promulgated by any State Commission having jurisdiction with respect thereto, amends the policy to provide insurance for automobile bodily injury and property damage liability in accordance with the provisions of such law or regulations to the extent of the coverage and limits of liability required thereby; provided only that the insured agrees to reimburse the company for any payment made by the company which it would not have been obligat-

ed to make under the terms of this policy except by reason of the obligation assumed in making such a certification. (Trial Court Opinion at 13–14).

 According to the Lehmans, the Pennsylvania Public Utility Commission issued the pertinent regulation regarding insurance requirements, and the regulation reads as follows:

§ 32.11 Passenger carrier insurance.

(a) No common carrier or contract carrier of passengers may engage in intrastate commerce and no certificate or permit will issue or remain in force ... until there has been filed with and approved by the Commission a certificate of insurance by an insurer authorized to do business in this Commonwealth, to provide for payment of valid accident claims against the insured for the bodily injury to or death of a person ... resulting from the operation, maintenance or use of a motor vehicle in the insured authorized service.

52 Pa.Code § 32.11.

The trial court concluded that this regulation does not require a bus operator under contract to provide insurance coverage for a bus that it does not own and did not register. The court reasoned that under Pennsylvania's Motor Vehicle Financial Responsibility Law, only the vehicle's owner or registrant is responsible for maintaining financial responsibility. *See* 75 Pa.C.S.A. § 1786. This responsibility, the court concluded, belonged to COLT. (Trial Court Opinion at 15). We agree.

Moreover, we decline to impose the requirement of maintaining coverage for every vehicle driven by Lebanon Coach on its insurer when the regulation clearly imposes that duty on the common or contract carrier of passengers. *See* 52 Pa.Code § 32.11; *Czarnecki v. Delco Cab, Inc.*, 276 Pa.Super. 148, 152, 419 A.2d 139, 141 (1980) (holding predecessor regulation likewise did not impose coverage requirement on taxicab company's insurer for cab not listed as scheduled vehicle in policy). Although the Lehmans strenuously argue that this Court's reasoning in *Czarnecki v. Delco Cab, supra*, should not apply to the instant matter, the Lehmans offer no case law in

support of their position. We conclude that neither the "state endorsement" nor 52 Pa.Code § 32.11 expands the basic auto policy to provide coverage for the January 11, 1988 accident involving the COLT-owned bus and Paula Jo Lehman.

 Additionally, we agree with the trial court's determination that the "federal endorsement" does not require Fireman's Fund to defend Lebanon Coach in the underlying action. This endorsement provides in relevant part:

> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance o[r] use of motor vehicles subject to financial responsibility requirements of Section 18 of the Bus Regulatory Reform Act of 1982 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.... *It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.* **However, all terms, conditions, and limitations in the policy to which this endorsement is attached shall remain in full force and binding between the insured and the company.** The insured agrees to reimburse the company for any payment made by the company on account of the accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

(Trial Court Opinion at 14) (emphasis in opinion).

 The Lehmans allege that the language "regardless of whether or not each motor vehicle is specifically described

in the policy" in the endorsement waives the condition in the basic policy that only "covered vehicles" are subject to the provisions of the policy. The Lehmans also assert that any ambiguity created between the endorsement and the basic policy must be construed against the insurer and in favor of coverage. While this assertion is legally correct, *see Butterfield v. Giuntoli, supra,* it is also a legal axiom that we will not create an ambiguity where there is none. *See Alexander v. CNA Insurance Company, supra; Equibank v. State Farm Mutual Automobile Insurance Company, supra; Koenig v. Progressive Insurance Company, supra.*

Fireman's Fund argues that the "federal endorsement" is inapplicable here because the language the Lehmans rely upon pertains only to "motor vehicles subject to the requirements of Section 18 of the Bus Regulatory Reform Act." Section 18 specifically applies to

the transportation of passengers for hire by motor vehicle in the United States from a place in a State to a place in another State, from a place in a State to another place in such State through a place outside such State, and between a place in a State and a place outside of the United States.

(R.R. at 169a).

Because the COLT-owned bus operated under contract by Lebanon Coach provided transportation only within Pennsylvania, and finding no ambiguity in the provisions of the policy, we conclude that the Fireman's Fund policy does not provide coverage for the COLT-owned bus. Rather, that responsibility rests with Carolina Casualty. Thus, we affirm the trial court's grant of summary judgment for Fireman's Fund.

Order reversed in part, affirmed in part, and case remanded for proceedings consistent with this opinion. Jurisdiction relinquished.

CAVANAUGH, J., concurred in the result.